**SZERLIP, Appellee,**

v.

**SZERLIP, Appellant.**

[Cite as *Szerlip v. Szerlip* (1998), 129 Ohio App.3d 506.]

Court of Appeals of Ohio,
Fifth District, Knox County.

No. 97–CA–31.

Decided Aug. 20, 1998.

508

*Gary Gottfried* and *Alan Gustafson*, for appellee.

*Andrea Yagoda* and *Patrick Hamilton*, guardian *ad litem*, for appellant.

---

GWIN, Judge.

On June 8, 1995, appellee filed a complaint for divorce in the Knox County Court of Common Pleas. The trial court issued an *ex parte* order designating appellee the legal custodian of the parties' children. On July 14, 1995, appellant filed an answer to the complaint. On November 8, 1995, the trial court issued temporary orders designating appellee as the residential parent, ordering appellant to pay child support, and appointing a receiver to pay the debts of the parties.

The final hearing on the matter was set for August 14, 1997. The trial court issued its decree of divorce on October 10, 1997.

Appellee and appellant were married on March 21, 1981. At the time of their marriage, appellant owned two adjoining lots in California. The first lot was designated Lot 41, and was vacant. The second lot was designated Lot 42, and contained a house. The address of this residence was 3516 Tacoma Avenue. Lot 42 was subject to a mortgage in the amount of $3,000. After the marriage, Lot 42 was mortgaged to finance the purchase of other property. Appellant placed Lot 42 in his and appellee's names in order to secure financing. Both lots were later sold for $115,000. After the combined sale, the new owner sold Lot 41 for $30,000. The trial court found the value of Lot 41 to be the separate property of appellant. The trial court made no specific ruling as to Lot 42.

The proceeds from this sale were rolled over into the purchase of the Church Road property in accordance with Section 1031, Title 55, U.S.Code. The purchase price of this property was $125,000. The parties payed $50,000 of the price of the property with proceeds from the sale of Lots 41 and 42. The rest of the cost was financed by the parties. An appraisal conducted by the parties revealed that the property had a fair market value of $200,000. Of its own initiative, the trial court ordered a reappraisal of the property and found its fair market value to be $360,000. The trial court ordered the property to be sold at auction and the mortgage, along with certain other debts, to be paid before distribution of the proceeds of this sale to the parties. Appellant requested another hearing after the court's reappraisal of the property. The trial court denied appellant's request. The trial court further ordered appellant to pay all capital gains taxes resulting from the sale of the property. The property sold for $400,000. The net proceeds of this sale were $320,889.64.

In May 1988, appellant was injured in an automobile accident. As a result of this accident, appellant received a settlement of $53,477. Appellant used $8,000 of this money to purchase property at 20 Adamson Street on May 22, 1991. The remainder of the money was used to refurbish that property. Appellant provided the trial court with checks totaling $15,354.15 to support that claim.

Appellant informed the court that the cost of check reproduction made producing evidence of the disposition of the remainder of the funds unfeasible. The trial court found that appellant had provided evidence that $7,800 of his separate property was used to purchase the Adamson Street property. The trial court also ruled that the $15,354.15 used to renovate the Adamson Street property was his separate property.

Prior to her marriage to appellant, appellee possessed a retirement fund worth approximately $4,000. By 1991, when the parties liquidated the account, it had grown in value to $49,505.29. The parties spent some of this money on real estate and deposited $20,000 in an IRA at Knox County Bank. Appellee made loans to various family members from this sum. At the time of a hearing on this matter, only $2,000 remained in the IRA. $5,000 had been repaid to appellee and used for various expenses. Approximately $9,000 was outstanding. The trial court awarded appellee the balance of these outstanding loans.

Appellee and appellant had agreed privately to divide the household goods. Appellant presented a list of items that were to be his under this agreement. The list was labeled "Defense Exhibit 2." Under the terms of the agreement, appellant was to allow appellee to retain all other household items, so long as the listed items were awarded to him. Appellee testified that she would not release some of those items to appellant and did not know where some of them were located. Appellee also testified that some of the items had been destroyed. The trial court awarded appellee all of the property except for some items listed by appellant. The trial court did not place a value on the household goods divided between appellant and appellee.

Appellee and appellant also reached a private agreement on the allocation of parental rights. The parties agreed that appellee would be the legal custodian and residential parent of their children. Appellant was to have specific visitation rights as defined by this private agreement. In its decree, the trial court awarded custody to the wife pursuant to their private agreement on the matter, but substituted the standard visitation schedule defined in the local rules of the court for the one agreed to by the parties.

It is from the trial court's October 10, 1997 decree that appellant prosecutes this appeal, raising the following assignments of error:

"I. The property division ordered by the trial court constituted an abuse of discretion and was against the manifest weight of the evidence and contrary to law.

"II. The trial court acted contrary to law and abused its discretion and denied appellant the due process of law and a fair hearing in failing to adopt the agreement of the parties relative to the allocation of parental rights and in issuing orders relative thereto without the introduction of any evidence.

"III. The trial court abused its discretion in failing to credit appellant with child support paid to appellee by the court-appointed receiver.

"IV. The trial court erred in its child support termination provision."

I

In his first assignment of error, appellant asserts that the trial court abused its discretion and acted contrary to law in its division of marital property. Appellant specifies nine instances in which he contends that the trial court committed error in its distribution of property.

A review of a trial court's division of marital property is governed by the abuse-of-discretion standard. *Martin v. Martin* (1985), 18 Ohio St.3d 292, 18 OBR 342, 480 N.E.2d 1112. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 541 N.E.2d 597. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. Throughout this analysis, the trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division of marital assets. *Briganti v. Briganti* (1984), 9 Ohio St.3d 220, 222, 9 OBR 529, 531–532, 459 N.E.2d 896, 898.

R.C. 3105.171 explains a trial court's obligations when dividing property in a divorce proceeding as follows:

"(C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.

"* * * *

(G) In any order for the division *or* disbursement of property *or* a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of 'during the marriage.' " (Emphasis added.)

■ In *Day v. Day* (Nov. 3, 1997), Licking App. No. 97 CA 27, unreported, this court held that R.C. 3105.171(G) refers only to distributive awards. Upon revisiting this decision, we overrule it for the following reasons.

First, R.C. 3105.171 provides trial courts with the authority to divide marital property equally or in accordance with equitable concerns. One method of achieving this end is a distributive award of property. See R.C. 3105.171(B), (C), and (D). However, R.C. 3105.171 empowers the court to make equitable awards of property that are not distributive in nature. R.C. 3105.171(G) provides that any disbursement of property *or* distributive award made pursuant to R.C. 3105.171 requires the trial court to enter specific written findings of fact supporting its decision to unequally divide property between the spouses. The language of this section, specifically the use of the word "or," clearly indicates that R.C. 3105.171(G) was intended by the legislature to encompass more than simply distributive property awards. Because R.C. 3105.171 provides guidelines for the unequal distribution of property according to equitable principles, and R.C. 3105.171(G) provides that any division of property according to R.C. 3105.171 requires written findings of fact by the trial court, we find that any unequal distribution of property in a divorce proceeding requires the trial court to enter written findings of facts supporting its decision.

Second, courts in Ohio have widely adopted this interpretation of R.C. 3105.171. See *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197; *Capper v. Capper* (Dec. 14, 1995), Lawrence App. No. 95–CA–8, unreported, 1995 WL 762923; *Houck v. Houck* (Aug. 27, 1991), Franklin App. No. 91AP–296, unreported, 1991 WL 224524; *Gibson, infra.*

Third, we find that there is good reason to require findings of fact and law when property is not divided equally. Unequal division of marital assets is allowed by statute only in order to reach an equitable outcome. In order for reviewing courts to determine whether the demands of the statute have been satisfied, the trial court must provide a basis for appellate review by recording findings of fact that support its decision. *Kaechele, supra; Gibson v. Gibson* (1993), 87 Ohio App.3d 426, 622 N.E.2d 425.

In the instant case, appellant contends that the trial court committed numerous errors in the division of property. Of appellant's allegations, we find only his assertion that the trial court erred in the division of household goods and

furnishings to be persuasive. In this allegation, appellant maintains that the trial court erred by not ordering appellee to convey to appellant certain items that were awarded to appellant by the trial court. Furthermore, appellant contends that the trial court erred in not determining the value of the household·assets before dividing them.

The record indicates that appellant requested ownership of the items listed as Exhibit 2. Appellant agreed that the rest of the household goods were to remain the property of appellee. This agreement was contingent upon appellant's receipt of the goods listed in Exhibit 2. However, R.C. 3105.171(F) clearly indicates that private agreements between parties concerning the division of marital assets are not binding upon the trial court when the court is dividing marital property equitably. R.C. 3105.171(F)(8) provides that the trial court shall consider a number of factors when equitably dividing property. Among these factors are any private agreements regarding the distribution of marital properties. However, private agreements are only one of the factors listed in R.C. 3105.171(F) that the trial court should consider when dividing marital property. Consequently, a private agreement between parties does not relieve the trial court of its statutory duty to divide marital property equitably.

The equitable division of marital property requires the trial court to determine the value of the properties to be divided. *Eisler v. Eisler* (1985), 24 Ohio App.3d 151, 24 OBR 240, 493 N.E.2d 975. The failure of a trial court to determine the value of the properties it divides is reversible error. *Id.* In the instant case, the trial court failed to conduct a valuation of household goods it divided between the parties. We find this omission on the part of the trial court to have been an abuse of discretion given the trial court's decision to conduct an equitable division of property between appellee and appellant.

Appellee contends that because appellant agreed to the above-stated division of marital property, it was unnecessary to have the household items appraised and it is now inequitable to allow appellant to demand that they be appraised. However, appellant's assent to the private agreement as evidenced by the trial record and defense Exhibit 2 does not contain any mention of a waiver regarding the appraisal of the items in question.

Assuming *arguendo* that the parties' agreement implicitly constituted a waiver of any right to demand that the trial court assess the value of the household goods in question, appellant must still prevail. Appellant's assent to the agreement was expressly conditioned on appellee's compliance with the agreement. Appellant's uncontradicted assertion is that appellee did not comply with the agreement. Appellee admits that this agreement was not complied with in her brief. In order to assert the defense of equitable estoppel, a party must

comport with the maxim that "he who seeks equity must do equity." *Christman v. Christman* (1960), 171 Ohio St. 152, 154, 12 O.O.2d 172, 173, 168 N.E.2d 153, 155. Under this maxim, equitable relief is not available to a person who has "violated conscience or good faith" or is guilty of reprehensible conduct. See *McPherson v. McPherson* (1950), 153 Ohio St. 82, 91, 41 O.O. 151, 155, 90 N.E.2d 675, 680; *Marinaro v. Major Indoor Soccer League* (1991), 81 Ohio App.3d 42, 45, 610 N.E.2d 450, 452; *Kettering v. Berger* (1982), 4 Ohio App.3d 254, 261–262, 4 OBR 471, 478–480, 448 N.E.2d 458, 465–467. Because appellee did not comply with the agreement in question, she cannot argue in equity that appellant's assent to it should estop him from appealing the trial court's error in not assessing the value of the household goods divided between them.

In regard to other specific allegations of error that were incorporated into appellant's first assignment of error, we hold that they are without merit. The trial court is not required by R.C. 3105.171 to divide marital property equally if an equitable division of property would be more appropriate. Furthermore, the trial court may divide both the separate and marital property of the spouses between them in order to achieve an equitable division of property. See R.C. 3105.171. The trial court entered findings of fact as required by R.C. 3105.171(G) in its decree of divorce dated October 10, 1997. The trial court further specified that its division of property was equitable and made pursuant to the factors enumerated in R.C. 3105.171. We have reviewed the trial court's findings of fact and conclusions of law and find that they support the division of marital properties. We hold that aside from the decision not to assess the household goods divided between the parties, the trial court did not abuse its discretion in its division of property between appellee and appellant.

The first assignment of error is sustained in part and overruled in part.

## II

In appellant's second assignment of error he maintains that the trial court erred in ordering the parties to comply with the standard local visitation guidelines. Appellant asserts that his consent to appellee's custody of their minor children was obtained only after appellee agreed to a more liberal visitation schedule than the one provided by the trial court. Appellant maintains that the trial court was obligated to provide him with an opportunity to present evidence in favor of the agreement or to withdraw his assent to appellee's status as the residential parent.

Upon review of the record, we hold that the trial court did not abuse its discretion in adopting the visitation schedule set forth in its local rules. The trial court heard testimony from the guardian *ad litem,* the court-appointed psycholo-

gist, and appellant before rendering its decision to modify the privately agreed visitation schedule. Given this testimony, the trial court had adequate grounds to adopt the standard visitation schedule set forth in its local rules.

Appellant's second assignment of error is overruled.

### III

In appellant's third assignment of error, he maintains that the trial court abused its discretion in failing to credit him with the child support paid to appellee by the court-appointed receiver. The standard for abuse of discretion is as set forth above.

At oral argument, appellee conceded that appellant should have been credited with at least $1,100 as a result of these payments.

The court-appointed receiver paid $2,200 to appellee on behalf of appellant for child support.

The pertinent testimony is as follows:

"[Question]: * * * During the course of your administration of this estate, was there an occasion when you paid child support to Carol Szerlip on behalf of Rubin Szerlip?

"[Receiver]: Yes.

" * * * *

"[Question]: So Mr. Szerlip, so to speak, was on his behalf $2200; is that accurate?

"[Receiver]: I should probably check it, but going from memory I believe it was 2200." (Emphasis added.)

The trial court later learned that appellant had not been credited by the child support enforcement agency with the $2,200 paid on his behalf to appellee. Nevertheless, the trial court did not issue an order crediting appellant with these funds.

Having reviewed the record concerning this matter, we hold that the trial court abused its discretion in not issuing an order crediting appellant with the $2,200 paid on his behalf by the court-appointed receiver. Appellant had no control over the manner in which the payment was made; therefore, we find it unreasonable to refuse credit to appellant for these payments. The receiver testified that she paid $2,200 to appellee on behalf of appellant as fulfillment of his child support obligations. Equity demands that appellant not be required to pay the same child support obligation two times.

Appellant's third assignment of error is sustained.

## IV

In his fourth assignment of error, appellant contends that the trial court erred by not using the required statutory language in its provision for child support termination.

Appellee concedes that the trial court erred by not inserting the language required by R.C. 3109.04(E).

Accordingly, appellant's fourth assignment of error is sustained.

For the foregoing reasons, the judgment of the Court of Common Pleas, Domestic Relations Division of Knox County, Ohio, is affirmed in part and reversed in part, and the cause is remanded to that court. On remand the court shall do the following:

1. Conduct an appraisal of the household items that were divided between appellee and appellant and divide these items equally or in accordance with equity,

2. Issue an order crediting appellant with $2,200 in child support payments.

3. Modify the child support termination provision to include the statutory language required by R.C. 3109.04(E).

*Judgment reversed*
*and cause remanded.*

FARMER, P.J., and JOHN W. WISE, J., concur.