DECISION AND JUDGMENT ENTRY
This is an appeal from a February 8, 2000 judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, granting appellee, Ethel R. Stacey, a divorce from appellant, Donald G. Stacey, Sr. Appellant has presented the following nine assignments of error for consideration on appeal:
 "ASSIGNMENT OF ERROR NUMBER ONE THE COURT ERRED IN GRANTING APPELLEE THE ENTIRE INTEREST IN THE MARITAL RESIDENCE (WHICH COMPRISED THE ONLY REAL PROPERTY OWNED BY APPELLANT AND APPELLEE).
 "ASSIGNMENT OF ERROR NUMBER TWO THE COURT ERRED IN GRANTING APPELLEE SPOUSAL SUPPORT (BOTH AS TO AMOUNT AND TIME).
 "ASSIGNMENT OF ERROR NUMBER THREE THE COURT ERRED IN NOT CONSIDERING THE VALUE OF THE PROPERTY PREVIOUSLY AWARDED TO APPELLEE (PRIOR TO FINAL HEARING) IN ITS DETERMINATION OF THE ALLOCATION OF PROPERTY RIGHTS.
 "ASSIGNMENT OF ERROR NUMBER FOUR THE COURT ERRED IN NOT CONSIDERING THE VALUE OF THE PROPERTY PREVIOUSLY AWARDED TO APPELLEE (PRIOR TO FINAL HEARING) IN ITS DETERMINATION OF THE ALLOCATION OF PROPERTY RIGHTS.
 "ASSIGNMENT OF ERROR NUMBER FOUR THE COURT ERRED IN DISMISSING APPELLANT'S OBJECTIONS (REQUEST FOR RECONSIDERATION AS TO THE FINAL JUDGMENT ENTRY ENTERED BY THE COURT ON FEBRUARY 6, 2000).
 "ASSIGNMENT OF ERROR NUMBER FIVE THE COURT ERRED IN ADOPTING ALLEGED STIPULATIONS SET FORTH IN THE FINAL ORDER.
 "ASSIGNMENT OF ERROR NUMBER SIX IT WAS ERROR FOR THE TRIAL COURT TO LIMIT COUNSEL'S TIME FOR DIRECT OR CROSS-EXAMINATION OF WITNESSES.
 "ASSIGNMENT OF ERROR NUMBER SEVEN THE COURT ERRED IN CONDUCTING A FINAL PORTION OF THE HEARING WITHOUT PARTICIPATION OF APPELLANT AND HIS COUNSEL.
 "ASSIGNMENT OF ERROR NUMBER EIGHT THE COURT ERRED IN NOT DIVIDING OR ALLOCATING ALL THE MARITAL ASSETS OF THE PARTIES.
 "ASSIGNMENT OF ERROR NUMBER NINE THE COURT ERRED IN NOT PERMITTING APPELLANT'S COUNSEL TO COMPLETE REDIRECT EXAMINATION OF HOWARD WHITCOMB."
The record shows appellant and appellee were married on January 14, 1967. The children born of the marriage were emancipated at the time of the divorce. During the pendency of the divorce, the parties entered into a consent judgment to permit appellee to sell the personal property of the parties, including several vehicles, and to keep the proceeds of the sale.
At the final hearing for divorce in the trial court, appellee's counsel made the following statement in opening:
 "As the Court knows, we have presented to the Court, five stipulations in this matter. The first is Joint Exhibit 1 that has been submitted to the Court which is in regard to the gentleman's pension. Joint Exhibit 2 is the 401(k) plan. Joint Exhibit 3 is the temporary spousal support arrearage due and owing of the husband to the wife. Those have already been resolved by way of stipulation and agreement as the Court will recall from this morning. We have done the grounds so that's out of the way.
 "With regard to the two additional stipulations we made this morning, one is the value of the real property that's in the joint names of the parties is $22,000 which represents a compromise between two appraisals we have in this matter. The other stipulation was that the wife is unemployed and has zero by way of annual earnings; and that the husband is gainfully employed and has 1998 earnings of $15,000. That concluded the stipulations from this morning.
 "It is our contention that what we have left before the Court is four issues. One is bills. I'm pleased to report that relative to the bills, we have been able to reach an agreement as to that. And the agreement on the bills is that wife is going to take care of the payment of her college loan.
"MR. ROYER: List the amounts when you do this.
 "MR. TUCKER: If I have the amounts I'll be happy to list them if you give me a moment. Yes, that's a good suggestion. Thank you, Mr. Royer. With regard to the bills, Judge, its my understanding we resolved that issue. That resolution is that wife is going to be solely liable on her student loan which now has a balance of $7,136.83. She is also going to take care of the Target indebtedness which is the sum of $386. She is also going to take care of the Hudson's indebtedness which is in the sum of $886.80. There is a MasterCard bill now known as Prime Option Visa having a balance of $5,442.59. Husband is going to be responsible for that bill. There are real estate taxes due and owing on the property and pursuant to the temporary order, husband was to pay that. There is a balance due and owing in the sum of $2,944.76 which the gentleman is going to be responsible for by agreement. There is also a sum of $907.46 which represents a payment on the real estate taxes which was made by the wife and husband will be obligated to repay her that sum of money. By virtue of that stipulation and agreement, Your Honor, that should resolve the issue of bills.
"THE COURT: What's the last amount.
"MR. TUCKER: The last amount was $900.
"THE COURT: It was for what please.
 "MR. TUCKER: She paid some real estate tax bill that the temporary order required husband to pay.
"MR. ROYER: We only agreed to reimburse half of that.
 "MR. TUCKER: Why would I agree to reimburse half of that if there is a temporary order that says it's his sole responsibility. That statement would be inconsistent with the Exhibit I gave you and my understanding of the discussion.
 "MR. ROYER: Why don't we leave that particular item out of that.
"THE COURT: All right.
 "MR. TUCKER: There is a temporary order that says that so I'll take my chances with the Court's decision in that regard.
"THE COURT: All right.
 "MR. ROYER: My understanding then real quickly is this Mr. Stacey, that you have agreed to pay the MasterCharge bill sum of five thousand and some dollars. She is paying the Hudson's and Target bill and school loan in the approximate amount of $8,000, and you're responsible for real estate taxes on the house.
"MR. STACEY: Right.
"THE COURT: Okay.
 "MR. TUCKER: If I may, Judge; Mrs. Stacey, you heard the stipulation.
"MRS. STACEY: Yes.
"MR. TUCKER: Do you understand it?
"MRS. STACEY: Yes.
"MR. TUCKER: Do you agree to it?
"MRS. STACEY: Yes.
"MR. TUCKER: Thank you."
The record contains the joint exhibits referred to by appellee's counsel in his statements.
After the court clarified that the remaining issues were attorney fees, spousal support, a Prudential life insurance policy and the disposition of real property, appellee took the stand and testified. When asked about her education, she said she had achieved a GED and took some college course work at Stautzenberger College. She explained that because of health problems, she had to quit working during her separation from appellant. She testified that she has severe allergies, chronic asthma, "stomach problems" and migraine headaches.
When asked about her monthly expenses, she testified that the total amount per month was $1,608.99. The total amount included a cost of $243.69 a month for COBRA to continue her health insurance coverage and $13.80 a month to continue her dental insurance coverage. She asked that the trial court award her $500 a month for spousal support, saying that even though that amount would not cover her monthly expenses, she was aware of the financial realities in the case.
During the direct examination of appellee, the parties stipulated that she had paid $907.46 on real estate taxes that appellant had been ordered to pay by the court in a temporary order. Appellee also testified that appellant owed her more than $10,000 for accrued spousal support. She asked for one-half of the value of the marital residence as her portion of the marital property, and also asked the trial court to award her appellant's half of the marital residence as satisfaction of the amount he owed her for accrued spousal support.
On cross-examination, appellee testified that she sold all of the personal property in the marital residence and all of the personal property in a storage unit to her current boyfriend's brother for $1,500. She said she sold everything for that amount because that is the amount she owed for the storage unit. In addition, she sold him twelve vehicles. The purchaser paid her $50 each for some of the vehicles and $100 each for some of the other vehicles, for a total of $800. She testified that she first tried to sell the vehicles to a junk man, but he would not purchase them after looking at them. She testified that she drove a thirteenth vehicle until she was in an accident, and the vehicle was totaled. She sold that vehicle to a junk dealer for $50. She testified that she did not sell any of appellant's tools, which were stored in the garage.
Appellant called his former attorney to the stand. His former attorney testified about the consent entry the parties entered into during the pendency of the divorce. He testified that it was his understanding that in exchange for appellant's agreement that appellee could sell the personal property in storage and keep the proceeds, appellee would agree to a reduction in the temporary alimony payments from $900 a month to $750 a month. He testified that while he was in the process of preparing a consent judgment entry for the parties to sign, he was discharged, and that the consent judgment entry was prepared by another attorney and filed some two months later.
Appellant then called a family friend, two of appellant's sons, and appellant's stepson to testify about the work they did with or for appellant to help clean and repair the marital residence and property. The witnesses said they helped clean and rake the yard around the marital residence and helped paint and repair the marital residence and garage. Each testified that appellant agreed to pay them for the work they performed.
Appellant then took the stand and testified. He testified about his health problems and submitted his medical records as an exhibit to verify his testimony. Because of his ongoing medical problems, he has had to cut back on his work hours, and he has restrictions on the type of work he can perform.
He testified that he believed his wife sold the vehicles for less than their true values, and submitted an exhibit listing the values he thought should have been assigned to each vehicle. He also testified that when he went to the marital residence approximately eight months before the hearing, all of his tools were gone. He submitted a list of the tools he believed were missing and the value he would assign to the tools. He said his understanding of the consent judgment he entered into with appellee was that she could sell the items kept in a storage unit, but she could not sell the personal property kept at the marital residence, the vehicles, or his tools.
He testified that he spent his own money to buy materials and to pay others for labor for fixing up the marital residence. He submitted a bill for $1,900 from one of his sons to verify that he had incurred expenses in the repair of the property. He also confirmed that there was an arrearage of $2,400 for taxes owed on the property.
He testified that he would not have enough money left to meet his own monthly living expenses if he were required to pay appellee spousal support of $500. On cross-examination, he said he believed spousal support in the amount of $100 a month would be fair.
He testified that he has two trucks in his possession. He sold a van, that was in his possession, as junk.
At the conclusion of appellant's testimony, the court, at appellant's request, continued the hearing to another date, so that appellant could call two other witnesses. When the hearing resumed, the court made the following statement on the record:
 "Let the record further reflect that this case was tried, as I recall, somewhere in time, as I recall, in June, and The Court offered a number of dates during the month of June to complete this case and none fit Mr. Royer's calendar so it was set for continued final hearing today at 9 o'clock.
 "Yesterday The Court denied Mr. Royer's request to continue the final hearing. It is almost 9:25. Neither Mr. Royer nor his client is here. We've looked in the halls and they're not here. So let's go ahead."
Appellee then testified that the arrearage for spousal support payments had increased to $11,020.83. In addition, she testified that because the taxes owed on the marital residence were not paid, she had been served with a complaint for real estate tax foreclosure on the property. In addition, the title work on the property showed that appellant's former attorney had a judgment lien against the property for $2,087 plus interest and costs.
The trial judge then orally announced his rulings in the case, and directed appellee's attorney to prepare a judgment entry that contained his rulings. On October 14, 1999, appellant filed a motion asking the trial court to set aside the last hearing. He argued that all parties were under the belief that the hearing was set for eleven o'clock in the morning on October 7, 1999, but that the court held the hearing earlier, at nine o'clock in the morning. On October 26, 1999, he filed a statement from his attorney in which his attorney asserted that the trial court called appellee's attorney to inform him of the change in time for the hearing on October 7, 1999, but did not contact his attorney.
On October 29, 1999, the trial court denied appellant's motion to set aside the October 7, 1999 hearing. The trial court said that on September 20, 1999 the clerk of court mailed both parties and counsel a trial notice setting the hearing for October 7, 1999 at 9:00 a.m. The court also said it did not place any calls to appellee's attorney, who was present and checked in with the court at 9:00 a.m. on October 7, 1999.
On February 8, 2000, the trial court signed and filed the final judgment entry of divorce. On the same day, appellant filed objections regarding the "proposed" final judgment entry. In his objections, he argued there was no stipulation that his pension plan would be equally divided between himself and appellee. He also said he never entered into a stipulation about the arrearage owed for spousal support. He argued that the arrearage figure was based upon a monthly amount of $750, but that the amount was reduced to $550 in 1998. He also said that he never stipulated that: 1) appellee has no income; 2) he would pay $5,442.59 for a credit card bill; 3) the 1998 tax refund for himself and appellee would be divided for attorney fees owed by himself and appellee. He said he presented unrefuted testimony that the vehicles sold by appellee had a total value of $2,500. He said there was no evidence presented that appellee shared expenses with her "live-in friend". He argued that he was entitled to one-half of the value of the real estate and that he has received no property in the divorce. Finally, he argued that the order that he receive tools was meaningless, since the tools are gone, and that the order that he pay $500 a month for spousal support was contrary to the evidence.
On February 14, 2000, appellee filed a motion to strike or dismiss appellant's objections to the proposed final judgment entry. Appellee argued there is no provision in the Ohio Civil Rules of Procedure for such an objection. She said appellant should have filed his own proposed judgment entry for the trial court's consideration, or should file a motion to vacate, pursuant to Civ.R. 60(B).
On February 22, 2000, the trial court found appellee's motion to strike well-taken and dismissed appellant's objections. On March 6, 2000, appellant filed his notice of appeal.
We will first consider appellant's fifth assignment of error, in which he alleges that he never agreed to two "stipulations" that the trial court included in its final judgment entry. Specifically, he argues that the only stipulation he agreed to relating to his pension and 401(k) plans was to admit the exhibits showing the values existing in those plans at the time of trial. He contends that he never agreed to a "QUADRO" to divide the values equally between himself and appellee. He says that after reading page ten of the transcript: "it is clear that Appellant's counsel indicated that the pension QUADRO was a matter of determination for the Court."
This court has carefully reviewed the cited page in the transcript, and can find no statement from appellant's counsel that shows that he expected the court to determine the allocation of the retirement assets in a QDRO. The only relevant statements from appellant's counsel that we find are located on page nine of the transcript, and they support the belief that the parties did anticipate an equal division of the pension and of the 401(k) assets. Specifically, appellant's attorney said:
 "We would ask that the property [marital residence] be awarded to my client in view of the fact that the pension benefits that Mrs. Stacey will benefit from will give her almost eighty some thousand dollars — close to $100,000. She has a pension now. He has half of a 401(k). * * *" (Emphasis added).
Furthermore, in this case, the trial court stated that the parties stipulated to an equal division of the pension and the 401(k) plans. We note that a trial court speaks through its judgment entries. BrackmannCommunications, Inc. v. Ritter (1987), 38 Ohio App.3d 107, 109. Absent some proof in the record to the contrary, therefore, this court will accept the statements of the trial court in a judgment entry as accurate. In addition, while the statements made by appellee's counsel seem to indicate that some other transcript might exist to show the exact stipulations the parties entered into regarding appellant's pension and the 401(k), appellant had the burden, pursuant to App.R. 9, to ensure that all necessary transcripts were presented to this court for review on appeal. Appellant's fifth assignment of error is not well-taken and is denied.
Appellant's first, third and eighth assignments of error are a further challenge to the trial court's property division order in this case. Appellant first argues that the trial court abused its discretion when it awarded the marital residence to appellee and when it divided the personal property of the parties. Appellant says that the marital residence was the only significant asset owned by the parties, and says that equity requires that he receive an award of at least some of the value of the property. He argues that at the very least, the trial court should have given him some credit for the time and money he expended during the pendency of the divorce to make needed repairs to the marital residence.
In his third assignment of error, appellant argues that the trial court should have considered the value of property awarded to appellee during the pendency of the divorce when it made the final property division in this case. In his eighth assignment of error, appellant argues that the trial court failed to divide or allocate a Prudential insurance policy.
Appellant says that aside from the order granting him one-half the value of his retirement benefits (pension and 401(k)) the trial court awarded appellee virtually all of the personal property of the parties. He says the order granting him possession of his tools was meaningless, because he testified in court that all of his tools were gone when he went to the marital property eight months before the date of the hearing.
Appellant further argues that the trial court "did not make appropriate evaluations as to certain items of property." First, he says that the trial court made "no disposition of the Prudential Insurance Policy". Next, he says the trial court made no finding regarding the value of the tools it awarded to him, of the pool table it awarded to him or of the personal items it awarded to appellee. He says that the trial court's finding that the thirteen vehicles appellee sold and all the personal property appellee sold were of nominal value is not supported by the evidence. He says the trial court failed to comply with R.C. 3105.071, because it did not make adequate findings of fact to support its property division order.
Appellee responds that the record shows that the marital residence was in considerable disrepair. In fact, the Toledo Municipal Court imposed a court order requiring that the property be cleaned up and repaired. In addition, appellant failed to comply with a temporary order entered by the trial court during the pendency of the divorce, that he pay real estate taxes owed on the property. The evidence showed that appellee paid $907.46 toward the taxes owed, and that the trial court ordered appellant to reimburse that amount to appellee. The evidence also showed that at the time of the final hearing, the total amount remaining to be paid for real estate taxes was $3,852.22, and the property was subject to foreclosure.
Appellee also says that the trial court did consider the value of the personal property that was awarded to her during the pendency of the divorce. The trial court ruled in its final judgment entry that the property was valued at $1,500 and that the vehicles sold were "practically worthless and of no real significant value." Finally, she says that the trial court did make an order relating to the Prudential insurance policy when it ordered that the policy be kept current as a guarantee for spousal support payments to appellee should appellant die while the obligation to make payments still existed.
Appellee also argues that appellant cannot complain about inadequate findings of fact, because appellant never made a request, pursuant to Civ.R. 52, that the trial court make any findings of fact. Appellee says that the general findings of fact included in the trial court's final decree are sufficient to permit this court to conclude that the trial court did not abuse its discretion when it made the property division order in this case.
As this court noted previously:
 "An appellate court will not reverse a trial court's property division order in a divorce proceeding unless the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. An abuse of discretion `connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219 quoting State v. Adams (1980), 62 Ohio St.2d 151, 157." Steusloff v. Steusloff (Jun. 5, 1998), Williams App. No. WM-97-033, unreported.
Furthermore, while the starting place for an equitable property division is an equal assignment of marital debt and marital assets, after considering all the relevant factors in a case, a trial court may choose to award one party more of the marital debts or marital assets and still have an equitable order. Cherry v. Cherry (1981), 66 Ohio St.2d 348, paragraph one of the syllabus. However, a trial court making a property division order must abide by the requirements found in R.C. 3105.171(G) which are:
 "In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of `during the marriage.'" R.C. 3105.171(G) (Emphasis added).
This court has previously said that when a trial court fails to make findings placing values on the property awarded to each party, the trial court has committed an error of law, because the trial court's failure to make adequate findings precludes this court "from effectively reviewing the property distribution." Hurst v. Hurst (1998), Wood App. No. WD-97-120, unreported. Therefore, even if the party adversely affected by the lack of factual findings fails to object and to request findings of fact in the trial court, on appeal this court will reverse and remand a case with inadequate factual findings so that the trial court can make the necessary findings. Id.
After carefully reviewing the record in this case, we conclude that the trial court did fail to make adequate factual findings to permit this court to conduct a meaningful review of the property division order in this case. From the record currently available, we note that the trial court chose to make an unequal division of the property owned by the parties in this case. The order of the trial court did equally divide between the parties the retirement and pension benefits of appellant. Furthermore, the trial court made a fairly equal allocation of debts to each party.
As we have already noted in our recitation of the facts and procedure in this case, appellee asked the trial court to award her appellant's half-interest in the marital residence as full satisfaction of the amount appellant still owed for temporary spousal support. However, the trial court chose not only to award appellee the marital residence, but to also order appellant to pay the arrearage of $11,020.83 for temporary spousal support. The trial court's orders resulted in a decision that awarded appellee the majority of the assets owned by the parties. The trial court did not make any findings of fact to explain why it went beyond appellee's request to award her the marital residence in exchange for the amount appellant owed for accrued temporary spousal support. Without those findings, this court cannot make a meaningful review of the property division award. See Szerlip v. Szerlip (1998), 129 Ohio App.3d 506,512. Accordingly, appellant's first, third and eighth assignments of error are well-taken to the extent that the trial court failed to make adequate findings of fact to explain its decision to award appellee the majority of the property owned by the parties and failed to assign values to some of the property awarded.
In support of his second assignment of error, appellant argues that the trial court erred when it ordered him to pay appellee spousal support. He makes several arguments to explain why he considers the monthly amount ordered and the term of payments to be inequitable.
The Supreme Court of Ohio has said that "after a divorce has been granted, the trial court is required to equitably divide and distribute the marital estate between the parties and thereafter consider whether an award of sustenance alimony would be appropriate." Holcomb v. Holcomb
(1989), 44 Ohio St.3d 128, 130. Since the trial court in this case must reevaluate and clarify its property distribution on remand, which may affect that court's view of what an appropriate spousal support order may be, the issue of spousal support is not yet ripe for review, and we will not consider the merits of appellant's arguments at this time. SeeGuthrie v. Guthrie (1998), Lucas App. No. L-97-1089, unreported.
In support of his fourth assignment of error, appellant argues that the trial court should have held a hearing to consider his objections to the wording of the final judgment entry in this case. Our ruling that this case must be remanded for reconsideration and clarification of the property division in the final judgment entry renders appellant's fourth assignment of error moot.
In support of his sixth assignment of error, appellant argues that the trial court erred when it limited his time for direct or cross-examination of witnesses. Specifically, appellant argues:
 "During the course of trial, both Appellant's and Appellee's counsel were directed at times to limit their examination of specific witnesses to time limits set by the Court. For example, in the examination of Appellee by her counsel (TR) the Court directed counsel to limit his time of examination to 20 minutes. Similar directions were made to Appellant (TR) [sic]"
App.R. 12(A)(2) provides:
 "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."
In this case, appellant has made allegations, but has not provided this court with citations to the record to support his allegations. We are therefore disregarding the allegations appellant makes in his sixth assignment of error and find it not well-taken.
In support of his seventh assignment of error, appellant argues that the trial court erred when it held the last portion of the hearing on October 7, 1999 without the participation of appellant or his counsel. Appellant makes several assertions including: 1) fifteen cases were set for the same date, several of which were uncontested; 2) the trial court has a practice of hearing the uncontested cases before the contested cases; 3) appellant was in court at 9:00 a.m., but his counsel "was running late"; 4) the trial court decided to hear appellant's case at 9:00 a.m. but told the bailiff to contact only appellee's counsel; and 5) appellee's counsel appeared after being called by the court, but appellant's counsel was not called and did not appear.
Once again, this court relies upon App.R. 12(A)(2). While appellant makes several factual assertions, he makes no citation to any portion of the record to support his assertions. Accordingly, this court disregards appellant's seventh assignment of error and finds it not well-taken.
In support of his ninth assignment of error, appellant argues that the trial court erred when it did not permit him to complete his redirect examination of his former trial attorney in this case. He says: "The purpose of examining Mr. Whitcomb on redirect was to clear up the issue of whether the personal property (in the interim order) was to be put back in the marital property pie or not. Appellant was prejudiced by this aspect and it is a key issue in this matter."
Our review of the trial transcript shows that the trial court did dismiss appellant's former trial counsel from the stand after appellant's counsel asked only one question on redirect. The trial court explained its action by stating that the one question asked was actually argument, and was not a proper question for redirect examination. Appellant's trial counsel did not object, and did not tell the trial court that he had other questions for the witness on redirect that were not argument.
The Supreme Court of Ohio has said:
 "The control of redirect examination is committed to the discretion of the trial judge and a reversal upon that ground can be predicated upon nothing less than a clear abuse thereof." State v. Wilson (1972), 30 Ohio St.2d 199, 204.
Applying that standard to this case, we find no abuse of discretion by the trial court. The question posed by appellant's counsel on redirect would not have elicited any new information, as appellant's former trial attorney had already testified that he did not believe the consent agreement meant that the court was precluded from considering the value of personal property awarded to appellee through the consent agreement when the trial court made a final property division order. Appellant's ninth assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is reversed in part and affirmed in part and remanded for further proceedings consistent with this opinion. Appellant and appellee are each ordered to pay one-half of the court costs on appeal.
 ____________________ HANDWORK, J.
 Mark L. Pietrykowski, P.J., CONCUR.
Richard W. Knepper, J., dissents