DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the April 7, 2003 judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, which granted the parties, appellant/cross-appellee, Rita Green, and appellee/cross-appellant, Robert Shall, a divorce and divided the parties' marital property. For the following reasons, we reverse, in part, and affirm, in part, the decision of the trial court.
 {¶ 2} The relevant undisputed facts are as follows. The parties were married in 1988, and no children were born issue of the marriage. On July 9, 2001, appellant filed a complaint for divorce; on July 18, 2001, appellee filed an answer and counterclaim for divorce.
 {¶ 3} During the marriage, the parties filed separate tax returns and maintained separate bank accounts. The parties each owned and operated their own businesses. Appellant operated R. Green Associates, a small executive recruiting company, and appellee was the majority shareholder of Chempace Corporation, a closely-held corporation which sold chemical products used for cleaning and deodorizing.
 {¶ 4} In 1992, the parties built a house in rural, western Lucas County, Ohio. The home is situated on a five-acre lot and has approximately 3,000 square feet of living space. The larger lot abuts a second, one-acre parcel with an additional residence with 1,286 square feet of living space. The parties also owned several horses and two Australian Shepard dogs.
 {¶ 5} The final hearing was conducted on October 2 and October 4, 2002. On January 22, 2003, the trial court's decision was journalized; the trial court's judgment entry of divorce, incorporating its decision, was journalized on April 7, 2003. In its rulings, the court made the following relevant findings: the value of appellee's shares of Chempace stock, subject to division as marital property, was $329,250, and was awarded to appellee; R. Green Associates was valued at $246,256.57, and was awarded to appellant; the value of two adjacent properties, one including the marital residence, was set at $369,494, and was awarded to appellee; the value of the horses was set at $52,500, and they were awarded to appellee; and appellee was also awarded the two Australian Shepard dogs which were valued at $3,000. The marital assets were divided as follows: $1,120,505.09 was awarded to appellant and $951,101.87 was awarded to appellee; appellant was ordered to make a $38,000 distributive award in favor of appellee. This appeal timely followed.
 {¶ 6} On appeal, appellant raises the following assignments of error:
 {¶ 7} "First Assignment of Error
 {¶ 8} "The trial court abused its discretion in valuing Green's business as of the date she filed for divorce. Judgment Order of Divorce (Appendix 1) pp. 3, 4; Decision of the Court (Appendix 1) pp. 3, 17-19.
 {¶ 9} "Second Assignment of Error
 {¶ 10} "The trial court erred in finding that Shall owned only 1,065 shares of stock in his company. Judgment Order of Divorce (Appendix 1) p. 3; Decision of the Court (Appendix 1) pp. 4-9.
 {¶ 11} "Third Assignment of Error
 {¶ 12} "The trial court abused its discretion in awarding the parties' two dogs to Shall. Judgment Order of Divorce (Appendix 1) p. 4; Decision of the Court (Appendix 1) pp. 14-16."
 {¶ 13} Appellee raises the following assignments of error on cross-appeal:
 {¶ 14} "I. The trial court abused its discretion by awarding Green fifty-four (54%) of the marital assets, while only awarding Shall forty-six percent (46%) of the marital assets, contrary to Ohio Revised Code section 3105.171.
 {¶ 15} "II. The trial court abused its discretion by deeming the horse tack a marital asset and awarding the horse tack."
 {¶ 16} In her first assignment of error, appellant argues that the trial court improperly valued appellant's business as of the date she filed for divorce, rather than the date of trial. The court valued the business at $246,256.57, despite testimony that at the time of trial appellant's business had no value.
 {¶ 17} R.C. 3105.171(A)(2)(a) establishes the presumption that the term "during the marriage" for purposes of the valuation of marital property is defined as from the date of the marriage through the date of the final hearing. However, subsection (b) permits a trial court to use an alternate date if it determines that the use of the dates under subsection (a) would be inequitable. A court's decision to use either date is discretionary and will not be reversed on appeal absent an abuse of discretion. Schneider v. Schneider (1996),110 Ohio App.3d 487, 493.
 {¶ 18} The use of an alternate date may be appropriate under certain circumstances. In Gullia v. Gullia (1994),93 Ohio App.3d 653, the Eighth Appellate District found that the trial court abused its discretion when it failed to use a "de facto" termination date of the marriage. Reaching this conclusion, the court noted: "A review of the evidence shows that after the parties' separation, they had separate residences, separate business activities and utilized separate bank accounts. In addition, no attempt at reconciliation was made by either party." Id. at 666. See Mason v. Mason, 8th Dist. Nos. 80368, 80407, 2002-Ohio-6042; Casper v. DeFrancisco, 10th Dist. No. 01AP-604, 2002-Ohio-623.
 {¶ 19} In the present case, in its January 22, 2003 decision the court found that "during the marriage" would be the period from the date of the marriage to the date appellant filed her divorce complaint. The court stated: "This finding is based upon the fact that the parties have been living separate and apart since May 20, 2001; that they had kept their finances separate throughout their marriage, including the filing of separate tax returns; and that the Plaintiff had been legally restored to a former name by the Lucas County Probate Court." Based on the foregoing, and after reviewing the record and the applicable law, we cannot say that the trial court abused its discretion when it valued appellant's business as of the date she filed the complaint for divorce. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 20} Appellant's second assignment of error disputes the trial court's finding that appellee owned 1,065 shares of Chempace stock; appellant claims that the record demonstrates that appellee owned 1,085 of the 1,524 outstanding shares of stock at the time of trial. Upon review of the record, we find that there is evidence that, at the time of trial, appellee owned 1,065 shares of Chempace stock. Accordingly, we find that the trial court did not abuse its discretion and appellant's second assignment of error is not well-taken.
 {¶ 21} In appellant's third and final assignment of error, she argues that the trial court abused its discretion when it awarded the parties' two dogs to appellee.[1] Specifically, appellant argues that the trial court "ignored" evidence favorable to her while focusing on evidence favorable to appellee.
 {¶ 22} In its January 22, 2003 decision, the court found that appellee was the legal owner of the dogs and that appellee trained the dogs and was primarily responsible for all of their expenses. The court noted that the dogs had always lived in the barn at the former marital residence, they have ample space to run, and they are cared for daily by an on-premises caretaker.
 {¶ 23} Notwithstanding the emotional attachment often felt by their owners, under Ohio law, dogs are considered personal property. See R.C. 955.03. The trial court has broad discretion in awarding personal, marital property. Holcomb v. Holcomb
(1989), 44 Ohio St.3d 128, 131. Based upon the evidence presented at trial, we cannot say that the trial court abused its discretion when it awarded the dogs to appellee. Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 24} We will now address appellee's cross-appeal. In his first cross-assignment of error, appellee contends that the trial court abused its discretion by improperly awarding appellant 54 percent of the martial assets while appellee received 46 percent of the martial assets.
 {¶ 25} In the trial court's April 7, 2003 judgment entry of divorce, appellee was awarded the following marital assets:
Marital interest in Chempace corporation $329,250 Marital real estate $369,494 Household furnishings/personal property $18,835 Horses $52,500 Dogs $3,000 Horse trailer $5,000 1992 Motor home $18,000 Edward Jones IRA accounts (2) $3175.12 Chempace profit sharing plan trust $150,837.28 Key Bank checking account $1,010.47 TOTAL $951,101.87
Appellant was awarded the following marital assets:
1999 Land Rover $25,000 Joint HR Block account $24,226.27 HR Block Revocable Trust $347,680.96 HR Block IRA $178,961.57 HR Block SIMPLE $33,680.76 Hartford Life Certificate $126,035.27 Vanguard Investments Trust 2 $130,472.54 Harris Bank Account $8,291.15 Harris Bank/R. Green Assoc. Account $246,256.57 TOTAL $1,120,505.09
 {¶ 26} Dividing the above assets, the trial court acknowledged that equalization of the assets would require an order for appellant to pay appellee a distributive award of $84,702; however, the court concluded that a distributive award of $38,000 would be appropriate. In reaching its decision, the court reasoned:
 {¶ 27} "* * * Section 3105.171(C) provides that if an equal distribution of the marital assets would not be equitable, the Court shall make an equitable distribution taking into consideration each of the nine (9) factors listed in Section3105.171(F). Having considered those factors, the Court finds that an equal distribution of the marital estate would not be equitable. While each of the statutory factors has been considered, the Court was particularly influenced by the ages of the parties, the duration of the marriage, the nature of the assets and liabilities, the liquidity of each particular asset, the foreseeable tax consequences, that both parties have been awarded income generating property, that all interest in the business entities have remained intact, and there are no financial entanglements between the parties. Although the Plaintiff is receiving approximately fifty-four (54%) of the marital property, essentially sixty-one percent (61%) of her assets consist of retirement benefits lacking liquidity. By comparison, Defendant is receiving approximately forty-six percent (46%) of the marital property, but only sixteen (16%) of the assets awarded to him consist of retirement benefits."
 {¶ 28} Appellee argues that the court erred when dividing the marital property because it failed to discuss each of the factors under R.C. 3105.171(F). Further, appellee contends that the court based its award on the erroneous conclusion that appellee would be receiving significantly more liquid assets than appellant would.
 {¶ 29} A trial court has broad discretion in dividing property in domestic relations cases. Berish v. Berish (1982),69 Ohio St.2d 318, 319. Thus, we may only reverse if we find that the trial court abused its discretion. Id. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion. Ross v. Ross (1980), 64 Ohio St.2d 203.
 {¶ 30} Upon review of the trial court's decision and judgment entry dividing the marital assets, we find that the court properly considered the R.C. 3105.171(F) factors. In fashioning a property division "the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, paragraph two of the syllabus. This is particularly true where there has been an unequal division of assets. Szerlip v.Szerlip (1998), 129 Ohio App.3d 506, 512.
 {¶ 31} Here, the court concluded, "an equal distribution of the assets would not be equitable." The court's basis for the unequal award was the fact that appellant's award consisted of 61 percent of non-liquid retirement benefits compared to appellee's receipt of only 16 percent of non-liquid retirement benefits. Problematic, however, is the trial court's characterization of appellant's H R Block Revocable Trust, valued at $347,580.96, as a retirement account. In fact, the court, in its January 22, 2003 decision, noted in a footnote: "Plaintiff referenced this account as `one of her retirement accounts.' Although the documentation does not support this representation, it has not been disputed by the Defendant."
 {¶ 32} During the trial in this matter, appellant testified that the revocable trust account was for retirement. However, the documentary evidence admitted at trial demonstrates otherwise. The trust statements indicate that appellant was the settlor and trustee of the account. A revocable trust is commonly defined as: "A trust in which the settlor reserves the right to revoke." Black's Law Dictionary (6th Ed.Rev. 1990) 1321. Further, during the course of the proceedings, injunctions were granted which prevented appellant from "transferring, selling, or liquidating" any of the assets in her three HR Block accounts (the IRA, the Simple Retirement, and the Revocable Trust.) Subsequently, appellant moved the court to vacate the injunctions. Attached to the motion, and admitted at trial, is the affidavit of appellant where she indicates, "two (2) of those accounts are retirement accounts and the third is my Revocable Trust account." Appellant further states: "Defendant and his counsel also knew full well that two (2) of the three (3) accounts were retirement accounts which would engender significant tax effects if withdrawals were to be taken from them."
 {¶ 33} Based on the foregoing, we conclude that the court's finding that the revocable trust account was a retirement account was not supported by competent credible evidence. Ross, supra. Appellant's mere statement that she considered the account a "retirement account" is insufficient. Undisputedly, appellant is not an expert in retirement accounts. If the court were to, carte blanche, accept a party's testimony about the characterization of assets, any savings or investment account could be classified as a retirement account. Accordingly, because the court used the division of the retirement accounts as a basis for the unequal distribution of assets, appellee's first cross-assignment of error is well-taken.
 {¶ 34} Appellee's second cross-assignment of error disputes the trial court's finding that the "horse tack" constituted marital property and was subject to equal division.[2]
Appellee argues that no evidence was presented regarding the horse tack because it was understood that the horse tack was appellee's separate property and not subject to division. Appellant counters that it was appellee's burden to show that the tack was, in fact, separate property.
 {¶ 35} An appellate court reviews the trial court's factual determination of whether property is marital or separate property based on a manifest weight of the evidence standard. Carpenterv. Carpenter, 6th Dist. No. WD-01-028, 2002-Ohio-526, ¶ 11, citing Kelly v. Kelly (1996), 111 Ohio App.3d 641, 642. Accordingly, the judgment of the trial court will not be disturbed on appeal if supported by some competent, credible evidence. Fletcher v. Fletcher (1994), 68 Ohio St.3d 464, 468.
 {¶ 36} In the instant case, appellee argues that the trial court should not have awarded the horse tack to either party because no evidence was presented regarding the tack. Ohio courts have held that a party seeking to have a certain asset classified as separate property bears the burden of proof by a preponderance of the evidence standard. Gallo v. Gallo, 11th Dist. No. 2000-L-208, 2002-Ohio-2815, ¶ 24.
 {¶ 37} In its January 22, 2003 decision, while discussing the horse tack and other farm equipment, the court noted in a footnote:
 {¶ 38} "Defendant claims that he is entitled to the farm equipment because he had farm equipment prior to the marriage and that the existing farm equipment is merely replacement of his premarital/separate property. However, `[p]remarital farm equipment fully depreciated by the time of the divorce and replaced by new equipment purchased from the farming operation proceeds is marital property. McDonald v. McDonald (Aug. 27, 1998), Highland App. No. 96 CA 912, unreported.' Carpenter v.Carpenter, 6th District No. WD-01-028, 2002-Ohio-526 at ¶ 10. Accordingly, the Court finds that the replacement farm equipment was purchased during the marriage and is marital property subject to division."
 {¶ 39} In light of the foregoing and after carefully reviewing the record and applicable law, we find that the trial court did not err in classifying the horse tack as marital property. If appellee desired that the horse tack be classified as separate property, the matter should have been raised at trial. Appellee's second cross-assignment of error is not well-taken.
 {¶ 40} Upon consideration whereof, we find that substantial justice was not done as to appellee/cross-appellant, and the judgment of the Lucas County Court of Common Pleas is reversed, in part, and affirmed, in part. The judgment is affirmed as to appellant/cross-appellee's assignments of error and appellee/cross-appellant's second assignment of error. The judgment is reversed as to appellee/cross-appellant's first assignment of error. The case is remanded for the trial court, in accordance with this court's decision, to consider the R.C.3105.171(F) factors, make the findings set forth in R.C.3105.171(G), and divide the marital assets in accordance with those sections. Appellant/cross-appellee is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
Knepper, J., Pietrykowski, J., Judith Ann Lanzinger, J.
concur.
[1] Prior to trial, the parties stipulated that the dogs would not be separated.
[2] The trial court held that the unvalued property, including the horse tack, would be divided with appellant making the initial selection, appellee the following two selections, appellant the fourth selection, and so on, alternating until all the items had been divided.