OPINION
This is an appeal from the judgment entry of divorce issued by the Geauga County Court of Common Pleas, Domestic Relations Division, in which the trial court adopted the magistrate's decision to grant appellant/cross-appellee, Milan Matic, and appellee/cross-appellant, Kathy Matic, a divorce.[1]
Appellant and appellee were married on April 6, 1990, in a civil ceremony and then later renewed their vows at a church ceremony on August 21, 1990. The parties had one child born as issue of their marriage. After eight and a half years of marriage, appellee filed a complaint for divorce on December 11, 1998.
This matter came on for a hearing before a magistrate on October 6, 1999. The magistrate issued his decision for the grant of divorce on November 2, 1999. In relevant part, the magistrate found as follows: (1) appellee's premarital funds totaling $32,931 were "eventually transferred" to a joint marital account; (2) appellee contributed premarital funds totaling $32,931 towards the down payment on the marital home; (3) the marital home was ordered to be sold, and the first $32,931 was to be distributed to appellee, representing her premarital contribution towards the purchase of the home, with the balance from the sale proceeds then to be divided equally; (4) the parties collectively received monetary gifts from appellant's mother; (5) appellant was ordered to pay the real estate taxes on the marital home until the property was sold; (6) appellant was ordered to pay spousal and child support; and (7) according to the child support worksheet, appellant's total annual gross income, including overtime and bonuses, was $39,959.06, while appellee's total annual gross income was $21,960.After being granted an extension of time, appellant and appellee filed objections to the magistrate's decision with the trial court on December 17, 1999 and December 29, 1999, respectively. Upon considering each parties' objections, the trial court adopted the magistrate's decision on January 26, 2000. It is from this judgment appellant appeals, asserting five assignments of error for our consideration:
 "[1.] The trial court erred in overruling appellant's objection's [sic] to the magistrate's decision and finding that $32,931.05 was appellee's separate property which constituted her premarital contribution to the marital home where the funds were not specifically and sufficiently traced to the marital asset and/or were co-mingled and transmuted into marital property.
 "[2.] The trial court erred in overruling appellant's objection to the magistrate's finding that the gifts from appellant's mother were subject to division as marital property.
 "[3.] The trial court erred in adopting the magistrate's decision concerning the division of property where such division was not equitable and in contravention of R.C. 3105.171.
 "[4.] The trial court erred in overruling appellant's objection to the magistrate's finding awarding spousal support in contravention of R.C. 3105.18.
 "[5.] The trial court erred in overruling appellant's objection and in adopting the magistrate's decision ordering appellant to continue paying the real estate taxes on the property until it is sold, where appellant has also been ordered to pay spousal support."[2]
 Under the first assignment of error, appellant contends that the trial court erred in finding that $32,931.05 was appellee's separate property and that it constituted her premarital contribution to the purchase of the martial home. Appellant does not dispute that appellee had $32,931.05 prior to entering into the marriage and that part of the down payment came from appellee's funds. Further, both parties testified that these funds were deposited into the joint account. Rather, appellant maintains there is no documentary evidence tending to show that $32,931.05 was deposited into the joint account, and no evidence proving that the $54,500 down payment included all of appellee's premarital funds. Essentially, appellant contends that the $32,931.05 cannot be adequately traced as these funds were commingled and transmuted into martial property.
It is well-settled that a trial court enjoys broad discretion in formulating the division of marital assets and liabilities in a divorce action. Cherry v. Cherry (1981), 66 Ohio St.2d 348; Bugos v. Bugos (Oct. 15, 1999), Trumbull App. No. 98-T-0141, unreported, 1999 WL 959835, at 2. As such, a reviewing court is limited to a determination of whether, under the totality of the circumstances, the trial court abused its discretion in dividing the property. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131. The term "abuse of discretion" implies more than just an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
Pursuant to R.C. 3105.171(A)(6)(a)(ii), separate property includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage[.]" However, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." (Emphasis added.) R.C. 3105.171(A)(6)(b). Thus, traceability becomes the focus in determining whether separate property has lost its character after being commingled with marital property. Peck v. Peck (1994),96 Ohio App.3d 731, 734. The party seeking to establish an asset as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. Peck at 734.
Here, the traceability of appellee's premarital funds totaling $32,931.05 is at issue. While the trial court did not mention traceability specifically, it stated that the $32,931.05 was "eventually transferred" to a joint account with appellant and that this "represent[ed] [appellee's] pre-marital contribution to the purchase of the home."
It is undisputed that prior to the marriage, appellee had $32,931.05 in various bank accounts solely under her name. This was proven through appellee's exhibits 20 and 21: (1) bank account statement ending April 2, 1990, with an ending balance of $19,660.50; (2) bank account statement ending March 21, 1990, with an ending balance of $2,015.94; (3) bank account statement ending March 21, 1990, with an ending balance of $11,254.61. Appellee further testified that these funds were subsequently deposited into the parties' joint account and used as a down payment for the marital home.
A joint bank account statement from January 2, 1992 to April 1, 1992, showed a beginning balance of $42,625.62.[3] Appellee testified that approximately $11,000 from her previous account was deposited into this joint account on February 1, 1992. In fact, the joint bank account statement indicated that $11,271.26 was deposited into the joint account just days before a $54,500 withdrawal was made for the down payment on the marital home.[4] However, no documentary evidence was presented to prove that the remaining premarital funds of $19,660.50 and $2,015.94 were also deposited into the joint account.[5] Rather, appellee testified that these funds were deposited into the joint account. Thus, according to the financial statements submitted at the hearing, appellee could only physically document approximately $11,271.26 of her $32,931.05 of premarital funds as being placed into the joint account.
The question now becomes what does tracing require? Appellant seemingly argues that tracing of funds requires physical documentation such as bank statements. We disagree. Certainly, it would be unreasonable to make it the exclusive method of proof.
Furthermore, it is important to remember that the party seeking to establish the separate property has the burden of proof only by a preponderance of the evidence to trace the asset. Peck at 734. We are unaware of any authority which would require the court to ignore compelling circumstantial evidence in determining whether this minimal burden of proof has been met.
Here, one of the most compelling circumstantial facts is that literally days before the wedding in April 1990, appellant had bank statements which indicated that she had close to $33,000 in separate funds in three different bank accounts. Second, there was an admission by appellant during the hearing in which he indicated that a portion of the down payment came from appellee.[6] According to appellant, there were two possible sources of funds for the down payment: (1) appellee's money; and (2) money he received from gifts. Both the magistrate and the trial court mentioned this admission.
It is unclear whether appellant was referring to the gifts from his mother or other wedding shower or surprise party gifts. The wedding shower and surprise party gift money only amounted to a few thousand dollars.[7] Hence, we assume that appellant was primarily referring to the gift of 20,000-30,000 Deutschemarks from his mother, which the court found to be marital property.[8] Giving appellant the benefit of the doubt, 30,000 Deutschemarks at $7,325 per ten thousand would equal approximately $21,975 as the value of the gift. This, in conjunction with appellee's separate funds of $32,931.05 and appellant's other gift money, would come close to comprising the $54,500 down payment.
It would appear that appellant's argument on appeal is that regardless of any such admission, appellee's funds were transmuted into marital funds by virtue of having been deposited into the joint account. In other words, the funds were co-mingled, lost their identity and hence, are untraceable. That leads us back to our initial concern as to what does tracing require?
Here, there is an admission that one of the only two sources of funds came from the other person's premarital resources. Next, based on appellant's testimony, the maximum value of the gift of Deutschemarks claimed by appellant would be $21,975. Under these circumstances, how much physical documentation is needed in order to establish appellee's funds as the source of the balance of the down payment? Enforcement of a rigid requirement of specific documentation makes little sense when it is apparent that the need for tracing arises only when there is a dispute as to the source of the funds.
In the instant matter, there is no dispute as to the source of the funds. Not only does the circumstantial evidence heavily support appellee's position, appellant actually admitted that appellee was one of the only two sources of the funds for the down payment. When this circumstantial evidence is coupled with the undisputed documentation of appellee's possession of $32,931.05 immediately prior to the marriage and the receipt of a maximum of $21,975 value in Deutschemarks as a gift from appellant's mother, along with the other gifts of money to appellant, the resulting conclusion is compelling. The trial court could have easily determined that the direct and circumstantial evidence constituted a preponderance of the evidence. For these reasons, appellant's first assignment of error is without merit.
In the second assignment of error, appellant challenges the trial court's finding that the Deutschemarks from his mother were gifts to the parties and thus, marital property subject to division. Instead, appellant suggests that the gifts from his mother were intended for him alone.
There seems to be no dispute between the parties that the Deutschemarks were, indeed, gifted by appellant's mother.[9] Thus, our inquiry focuses on whether these gifts were intended solely for appellant or for both of the parties.
"Separate property" is defined in R.C. 3105.171(A)(6) as:
 "(a) * * * all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
"* * *
 "(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." (Emphasis added.)
 It follows that a gift acquired by a spouse during the course of the marriage is presumed to be marital property unless it is shown by clear and convincing evidence to have been intended by the donor to be the exclusive property of the recipient spouse. Barkley v. Barkley (1997), 119 Ohio App.3d 155, 168. Appellant, as the party seeking to have the Deutschemarks deemed non-marital property, had the burden of proving, by clear and convincing evidence, that the gifts received from his mother were his separate property and not intended as marital gifts. Barkley at 168.
At the hearing, the following evidence was introduced with respect to the gifts made by appellant's mother. Appellee testified she was aware that appellant received 10,000 Deutschemarks from his mother as a wedding gift in August 1990.[10] An additional 10,000 Deutschemarks was later gifted to appellant through a friend from his parents. Thus, according to appellee, the mother gifted a total of 20,000 Deutschemarks, and this was later deposited into their joint account.[11]
Although appellant would like us to view appellee's agreement with the statement that appellant "got a gift from his parents" as an admission that the gift was only intended for appellant, we decline to do so. The meaning of appellee's testimony could be easily construed to be that appellant was the physical recipient of the gift. In fact, that meaning is the only one consistent with the rest of appellant's testimony.
According to appellant, his mother gifted a total of 30,000 Deutschemarks. With regard to this, appellant provided the following testimony:
 "* * * I went to pick her [his mother] up at the airport, and she was in the same car with the two of us [appellant and appellee]. So we were talking and when we arrived to my grandfather's place she told me, children I brought you a gift of 20,000 German marks." (Emphasis added.)
 Appellant also explained that he received another gift of 10,000 Deutschemarks from his parents through a friend. According to appellant, he, along with his wife, made arrangements with the friend to pick up this money. He claimed that these funds were then deposited into the joint account but later withdrawn to purchase certain items, such as a truck and the marital home.
In addition, on cross-examination, the following exchange took place:
 "[Q.] [by appellee's attorney] * * * You state that you and your wife received a wedding gift from your mother of 20,000 deutschmark. Is that correct?
"[A.] [by appellant] Yes.
"* * *
 "[Q.] Mr. Matic, do you have any proof that your mother gave you a gift?
"[A.] No. It was just the two of us, alone.
"[Q.] Who do you mean, the two of us alone?
"[A.] My Katie [appellee].[12]
 In considering the testimony presented at the hearing, we conclude that appellant failed to prove, by clear and convincing evidence, that the gifts of Deutschemarks by his mother were, in fact, intended for him alone. Therefore, the trial court properly found these gifts to be marital. Accordingly, appellant's second assignment of error is without merit.
In his third assignment of error, appellant asserts that the trial court's property division was inequitable because, according to his calculations, appellee was awarded between 60-63 percent of the marital assets plus spousal support while he received between 37-40 percent of the marital assets. In addition, appellant suggests that the trial court failed to provide reasons for the inequitable award, which hinders appellate review.
For the reasons that follow, we determine that it was error for the trial court to adopt the magistrate's decision when no written explanation or findings of fact were made to support the unequal division of property, contrary to R.C. 3105.171(G).
When allocating property between the parties, a trial court must always indicate the basis for its decision in sufficient detail to enable a reviewing court to determine that the decision is fair, equitable and in accordance with law. R.C. 3105.171(G); Kaechele v. Kaechele (1988),35 Ohio St.3d 93, paragraph two of the syllabus; Szerlip v. Szerlip
(1998), 129 Ohio App.3d 506, 512; Bishop v. Bishop (June 9, 2000), Portage App. Nos. 98-P-0055 and 98-P-0080, unreported, 2000 WL 757592, at 9.[13]
In the instant matter, the trial court's judgment entry indicated that the court made an unequal division of marital property without issuing findings of fact in support of the property division.[14] While, arguably, the record may support an uneven distribution of the assets, the court failed to provide findings of fact to support this division of property as required by R.C. 3105.171(G). Rather, the court merely stated that it was making "an equitable distribution of the assets of the parties[.]" As a result, we determine that appellant's third assignment of error is meritorious as the trial court failed to comply with the mandate of R.C. 3105.171(G). On remand, the trial court is instructed to issue written findings of fact to support the unequal division of property pursuant to R.C. 3105.171(G), or to remand to the magistrate to do so.
In his fourth assignment of error, appellant contends that the award of spousal support in the amount of $105 per month for three years was unwarranted because the trial court failed to consider the factors under R.C. 3105.18(C)(1). To support his contention, appellant points to the judgment entry where the trial court merely found that "[appellee] has aneed for spousal support." (Emphasis added.)
It is well-established that pursuant to R.C. 3105.18(C)(1), the trial court enjoys broad discretion in awarding spousal support to either party when it is "appropriate and reasonable" to do so. Glass v. Glass (Dec. 22, 2000), Lake App. No. 99-L-120, unreported, 2000 Ohio App. LEXIS 6103, at 6. Such an award will not be disturbed on appeal absent an abuse of discretion. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67.
To determine whether spousal support is appropriate and reasonable, the trial court is required, under R.C. 3105.18(C)(1), to consider all of the following factors:
 "(1) the income of the parties; (2) the earning abilities of the parties; (3) the ages and health of the parties; (4) the parties' retirement benefits; (5) the duration of the marriage; (6) the appropriateness of the parties to seek employment outside the home; (7) the marital standard of living; (8) the education of the parties; (9) the assets and liabilities of the parties; (10) the contribution of either party to the other's education; (11) the cost of education of the party seeking support; (12) the tax consequences of a spousal support award; (13) the lost income that results from the parties' marital responsibilities; and (14) any other factor the court deems relevant." Davis v. Davis (Mar. 31, 2000), Portage App. No. 98-P-0122, unreported, 2000 WL 522481, at 3.
 In Stafinsky v. Stafinsky (1996), 116 Ohio App.3d 781, 784, this court held that a trial court must provide facts and reasons when awarding spousal support:
 "In making spousal support awards, R.C. 3105.18
requires the trial court to review the statutory factors in [R.C. 3105.18(C)(1)] that support such an order, and then indicate the basis for awarding spousal support in sufficient detail to facilitate adequate appellate review. Kaechele v. Kaechele
(1988), 35 Ohio St.3d 93, 96-97 * * *." (Parallel citation omitted.) (Emphasis added.)[15]
 Moreover, a finding by the trial court that "there is a present need for spousal support" is, standing alone, insufficient to meet the requirement that the trial court set forth the basis for its decision to award such support. (Emphasis added.) Mallett v. Mallett (1996), 116 Ohio App.3d 139, 141.
In the instant matter, it is evident from a review of the judgment entry that the trial court awarded spousal support on the basis that "[appellee] has a need for spousal support. * * *" (Emphasis added.) Such a conclusive statement is insufficient. When the legislature removed the term "necessary" from R.C. 3105.18 and substituted it with the phrase "appropriate and reasonable," the relevant inquiry became "whetherspousal support is appropriate and reasonable[.]" (Emphasis added.) R.C. 3105.18(C)(1). See, also, Bowen v. Bowen (1999), 132 Ohio App.3d 616,626; Glass at fn. 3; Noll v. Noll (June 7, 2000), Lorain App. No. 98CA007042, unreported, 2000 WL 727541, at 2; Houck v. Houck (Dec. 26, 1997), Trumbull App. No. 97-T-0025, unreported, 1997 Ohio App. LEXIS 5950, at 9.
Certainly, need can be a factor; it could even be the primary factor, but a reviewing court must be shown the basis for that determination. Additionally, it is unclear from the judgment entry whether the trial court considered the other requisite factors listed in R.C. 3105.18(C)(1). While, arguably, the record may contain evidence supporting an award of spousal support, we cannot speculate when the judgment entry does not contain an analysis or explanation of how the factors enumerated in R.C.3105.18(C)(1) affected its decision.
Thus, in our view, the trial court erred in failing to sufficiently explain its order of spousal support, and appellant's fourth assignment of error is sustained. On remand, the trial court is instructed to clearly set forth in a judgment entry those factors indicating the basis for the award of spousal support in sufficient detail to enable a reviewing court to determine that such an award is fair, equitable and in accordance with the law.
In appellant's fifth assignment of error, he takes issue with the trial court's decision ordering him to pay the real estate taxes on the property until the marital home was sold. To support his position, appellant suggests that appellee has the means to pay her share of the real estate tax and that the fair and equitable decision would have been to order the parties to split the taxes.
In light of our remands on the previous assignments, we determine that this issue will of necessity have to be reconsidered and re-evaluated. At that time, the court and/or the magistrate can embellish the present or new determination. While we do not find error per se, we do remand this matter for reconsideration, if any. For these reasons, appellant's fifth assignment of error is sustained.
Now, we turn to appellee's cross-appeal wherein she submits the following assignments of error:
 "[1.] The trial court erred when it failed to credit plaintiff-appellee/cross-appellant Kathy Matic with the appreciation attributable to her $32,931.05 contribution of separate property which was used to purchase the marital home.
 "[2.] The trial court abused its discretion when it ordered the marital home to be listed for sale, thereby denying plaintiff-appellee/cross-appellant Kathy Matic and the parties' minor child time to remain in the home."
 In her first assignment of error on cross-appeal, appellee maintains that the trial court failed to award passive appreciation attributable towards her $32,931.05 contribution of separate property, which was used as a down payment to purchase the marital home. Appellee reasons that the appreciation is passive and remains her separate property because there was no evidence presented at the hearing that the increase of $15,000 in the value of the marital home was due to any efforts or expenditures of the parties.
We agree with appellee that a spouse is, indeed, entitled to claim passive appreciation in the marital home which is attributable to the use of the spouse's separate property in making a down payment. Munroe v.Munroe (1997), 119 Ohio App.3d 530, 537-538; O'Brikis v. O'Brikis (Oct. 6, 2000), Portage App. No. 99-P-0045, unreported, 2000 WL 1488041, at 3. We further agree that appreciation, as a result of an increase in the fair market value of separate property due to its location or inflation, is considered passive income. Munroe at 536; Bugos at 3. Because appellee sought to have the appreciation of the home characterized as separate property, she had the burden of proof on this issue by a preponderance of the evidence. O'Brikis at 3; Polakoff v. Polakoff (Aug. 4, 2000), Trumbull App. No. 98-T-0163, unreported, 2000 WL 1121799, at 5.
In the case at bar, it is undisputed that the original purchase price of the home was $130,000.[16] The record further reflects the parties stipulated that the current value of the marital home was $145,000.[17]
While there was an increase of $15,000 in the value of the marital home, the record does not contain evidence attributing a cause for this increase. As a result, we cannot determine whether the increase in the value of the marital home should be deemed marital or separate.
While appellee speculates that the marital home's increased value was clearly attributed to "inflation or other market conditions," this court is unwilling, as was the trial court, to make such a speculative assumption. For instance, appellee, as the party bearing the burden of proof on this issue, did not provide any evidence that the $15,000 increase in the marital home was solely attributable to market conditions. Additionally, appellee testified that repairs were made on the home. "Although it is necessary to perform regular maintenance on a house in order to fully participate in a general increase in market value of real estate in the vicinity, any increase in the market value of the house is not `due to' such maintenance." Nine v. Nine (Mar. 1, 1995), Summit App. No. 16625, unreported, 1995 WL 89478, at 4.
For these reasons, this court concludes, as did the trial court, that there was not enough information or evidence presented at the hearing to evaluate this matter. See, e.g., Bach v. Bach (Sept. 10, 1999), Montgomery App. No. 17497, unreported, 1999 WL 919935, at 5. Accordingly, appellee failed in her burden of proof, and her first assignment of error on cross-appeal is meritless.
In the second and final assignment of error on cross-appeal, appellee asserts that the trial court abused its discretion when it ordered the immediate sale of the marital home. According to appellee, the trial court ignored certain factors, such as the child's best interest and appellee's economic problems, which dictated that she should have had time to remain in the marital home.[18]
R.C. 3105.171(F) is relevant to this issue and states in pertinent part:
 "In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
"* * *
 "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
"* * *
 "(9) Any other factor that the court expressly finds to be relevant and equitable."
 Although R.C. 3105.171(F)(9) provides that the trial court can base its decision on any "relevant and equitable" factor, the trial court is not without limitation in this regard. R.C. 3105.171(C)(1) requires that marital property be divided equally or in a manner that would manifest an equitable division of marital property.
In applying the above statutory law to the instant matter, we do not perceive an abuse of discretion. The trial court, in deciding to order the sale of the marital home, acknowledged that appellee would have preferred to have remained in the marital home for the following reasons:
"A. It is the only home their child has known;
"B. Friends and neighbors are in the area;
"C. The child has gone through a lot;
"D. The home is the child's security;
 "E. She [appellee] can not afford to move to an apartment;
 "F. It is close to her [appellee] work and the child's school."
 While R.C. 3105.171(J)(1) permits a trial court to issue an order, if it deems it to be equitable, to allow one party to remain in the marital residence for a reasonable period of time, the trial court noted that this would have delayed appellant's receipt of his share of the marital property:
 "The Court has considered the desirability of awarding the family home to [appellee] for some period of time. The Court, however, finds it is not equitable to do so. To do so would substantially delay [appellant's] receiving his share of the property."
 Upon review of the record, we hold that the trial court did consider the factors as required by R.C. 3105.171(F) in determining whether to allow appellee to remain in the marital home and also properly determined that it would have been inequitable to do so. The record presents no reason to find that appellee, with her income supplemented by the child support, was unable to procure suitable housing for herself and her daughter.[19] Accordingly, the trial court did not abuse its discretion when it ordered the marital home to be sold. Appellee's second assignment of error on cross-appeal is meritless.
Based on the foregoing analysis, the judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for proceedings consistent with this opinion.
 ______________________________________ JUDITH A. CHRISTLEY, JUDGE
O'NEILL, P.J., concurs, NADER, J., concurs in judgment only.
[1] For ease of discussion, appellant/cross-appellee, Milan Matic, will be refereed to as appellant while appellee/cross-appellant, Kathy Milan, will be referred to as appellee.
[2] Appellee filed a cross appeal in this matter, and it will be addressed later in this opinion.
[3] This bank statement was admitted into evidence as appellee's exhibit 22.
[4] The $54,500 withdrawal, which represented the down payment for the marital home, occurred on February 7, 1992. Further, the purchase agreement for the marital home was admitted into evidence as appellee's exhibit 23. This document verified that $54,500 was submitted as a down payment for the marital home, which was purchased in February 1992.
[5] Apparently, the bank records were not required to be maintained longer than seven years by the bank.
[6] Appellant provided the following testimony on direct examination:
"Q. What was the down payment on [the] house?
 "A. * * * $54,000 was down payment and whatever the rest was for filling out the papers.
"* * *
 "Q. Where did these funds [for the down payment] come from?
 "A. That money came from what she had, the money she had, and what I had from the gifts. * * *"
[7] Consistent with appellant's testimony, the trial court made the following statement with respect to the wedding shower and surprise party gifts:
 "22. [Appellant] also claims that * * * a surprise party was given for him and he received several gifts of $50 or $100 from the people at the surprise party. There was also a wedding shower for the parties. He claims a gift of $500 from an uncle was received and another $450 or $500 from a grandfather."
[8] It is unclear from the record what the value of the Deutschemarks is in U.S. currency. According to appellee's testimony, 10,000 Deutschemarks equaled approximately $6,000 U.S. dollars. However, appellant claimed that appellee informed him that it was equal to $7,325 U.S. dollars.
[9] However, there is a dispute as to the exact amount gifted by appellant's mother. With respect to this, the trial court's decision stated the following:
 "25. The parties received a gift from [appellant's] mother of either $10,000 German Marks, or $20,000 German Marks. [Appellant] claims it was $20,000 and [appellee] claims it was $10,000. * * *
 "26. The parties also received a gift of $10,000 German Marks from [appellant's] mother. * * *"
 A review of the transcript of the hearing indicates that appellee, in fact, claimed that appellant's mother gifted a total of 20,000 Deutschemarks while appellant averred that a total of 30,000 Deutschemarks was gifted. We note that on appeal appellant does not take issue with the exact amount gifted. Rather, he challenges the finding that the gift of Deutschemarks from his mother was marital property.
[10] As noted in the beginning of this opinion, the parties were already married on April 6, 1990, in a civil ceremony. However, they choose to have a second marriage ceremony in a church on August 21, 1990. Thus, the gift of Deutschemarks by appellant's mother was made during the marriage.
[11] The following testimony was provided by appellee during cross-examination:
 "[Q.] * * * Now Mrs. Matic, during the spring and summer of 1990, you were aware that [appellant] got a gift from his parents, correct?
"[A.] Yes.
"* * *
 "[Q.] Okay. So you're saying it's [the gift] only a total of 20,000, not a total of 30,000?
 "[A.] His [appellant's] mom brought 10,000 and his friend brought 10,000." (Emphasis added.)
[12] During the hearing, appellant attempted to introduce exhibit C, which was a certified affidavit from his parents corroborating his testimony that he received 30,000 Deutschemarks from them. However, the magistrate excluded this affidavit on the basis of hearsay. That decision is not being challenged on appeal.
[13] R.C. 3105.171(G) dictates the following:
 "In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of `during the marriage.'" (Emphasis added.)
[14] Excluding the proceeds received from the sale of the marital home, appellant received $16,397.89, or 40 percent of the marital property, while appellee received $23,906.72, or 60 percent of the marital property, a difference of approximately $7,508.83.
[15] The trial court must adhere to this requirement even in the absence of a Civ.R. 52 motion requesting findings of fact and conclusions of law. Herman v. Herman (Mar. 28, 1997), Portage App. No. 96-P-0194, unreported, 1997 WL 158106, at 4.
[16] This is demonstrated by the purchase agreement for the marital home, entered into evidence as appellee's exhibit 23.
[17] An appraisal report indicating the appraised value of the marital home as being $145,000 was admitted into evidence as appellee's exhibit 7.
[18] Under this assignment of error, appellee also argues that she should have been awarded the marital home. Because appellee never raised this argument with the court below, we will not consider it on appeal.Glass at 24; Ayer v. Ayer (June 30, 2000), Hamilton App. No. C-990712, unreported, 2000 WL 864459, at 4.
[19] Appellant was ordered to pay $440.23 per month in child support.