[Cite as *Golan-Elliott v. Elliott*, 2017-Ohio-8524.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

VIRGINIA GOLAN-ELLIOTT,

    PLAINTIFF-APPELLEE,           CASE NO. 14-17-01

    v.

G. RALPH ELLIOTT,                O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Domestic Relations Division
Trial Court No. 15-DR-0076

Judgment Affirmed

Date of Decision: November 13, 2017

APPEARANCES:

    *Aaron E. Michel* for Appellant

    *Anthony W. Greco ad Aaron E. Kenter* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-Appellant, G. Ralph Elliott ("Ralph") appeals the January 26, 2017 Final Judgment Entry/Decree of Divorce issued by the Union County Court of Common Pleas, Domestic Relations Division, granting him a divorce from Virginia Golan-Elliott ("Virginia"). On appeal, Ralph assigns as error: (1) the trial court's denial of temporary support and subsequent spousal support award of $250 per month; (2) the trial court's failure to make findings of fact, failure to identify and classify assets, and failure to credit Ralph with transferring assets to Virginia; (3) the trial court's determination that the antenuptial and separation agreements were inapplicable; (4) the trial court's denial of Ralph's motion to add an expert to his witness list; and (5) the trial court's classification and valuations of Virginia and Ralph's respective residences and their marital debt in regard to the distributive award. For the reasons that follow, we affirm the judgment of the trial court.

<em>Facts</em>

{¶2} Ralph and Virginia were married on July 3, 1997. (Doc. No. 66 at 1). They signed an antenuptial agreement the day of their marriage and both were represented by counsel when the agreement was signed. (11/01/2016 Tr., Vol. II, at 8-9; Def. Ex. No. B). At the time of their marriage, Ralph was 61 and Virginia was 37. (Doc. No. 40 at 3). No children were born as issue of their marriage. (Doc. No. 66 at 1).

**{¶3}** During the course of their marriage, both Ralph and Virginia were professional realtors and were actively engaged in the selling of real estate. (*Id.* at 2). Also during their marriage, Ralph inherited an interest in real property, a portion of which ultimately became the parties' marital residence. (*Id.* at 3).

**{¶4}** In 2013, the parties decided to terminate their marriage by dissolution and filed a petition and separation agreement in Logan County, Ohio. (*Id.* at 2). However, Ralph failed to appear for the final dissolution hearing and the case was dismissed. (*Id.*).

### *Procedural History*

**{¶5}** This instant action commenced in Union County when Virginia filed her complaint for divorce on May 26, 2015 in case number 15-DR-0076. Ralph filed his answer on June 18, 2015. However, Ralph also filed a complaint for divorce in Union County on May 20, 2015, together with a request for temporary spousal support, in case number 15-DR-0067. On June 24, 2015 the trial court consolidated the divorce cases, and designated Virginia as the Plaintiff and Ralph as the Defendant in case number 15-DR-0076. On May 5, 2016 the trial court denied Ralph's motion for temporary spousal support.

**{¶6}** The matter proceeded to a contested final hearing on October 31st and November 1st, 2016. (Doc. No. 66 at 1). From this hearing the trial court issued its Final Judgment Entry/Decree of Divorce (the "Decree") on January 26, 2017. In

the Decree Virginia and Ralph were granted a divorce from each other on the grounds of incompatibility. (*Id.*).

{**¶7**} It is from this Decree that Ralph appeals, presenting the following assignments of error for our review:

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED TO THE PREJUDICE OF THE HUSBAND BY DENYING TEMPORARY SUPPORT AND SUBSEQUENTLY AWARDING $250 PER MONTH IN SPOUSAL SUPPORT TO START YEARS AFTER THE START DATE UNDER THE SEPARATION AGREEMENT.**

**ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT ERRED TO THE PREJUDICE OF THE HUSBAND BY FAILING TO MAKE FINDINGS OF FACT AS TO THE BUSINESS ASSETS, FAILING TO IDENTIFY AND CLASSIFY THESE ASSETS, AND FAILING TO CREDIT THE HUSBAND FOR THE TRANSFER OF THOSE ASSETS TO THE WIFE BY MEANS OF A DISTRIBUTIVE AWARD AND SUPPORT.**

**ASSIGNMENT OF ERROR NO. III**

**THE TRIAL COURT ERRED TO THE PREJUDICE OF THE HUSBAND BY CONCLUDING THAT THE ANTENUPTIAL AND SEPARATION AGREEMENTS WERE INAPPLICABLE IN DETERMINING SUPPORT AND EQUITABLE DISTRIBUTION OF MARITAL AND SEPARATE PROPERTY AND LIABILITIES.**

**ASSIGNMENT OF ERROR NO. IV**

**THE TRIAL COURT ERRED TO THE PREJUDICE OF THE HUSBAND WHEN IT DENIED THE HUSBAND'S MOTION TO ADD AN APPRAISAL EXPERT TO THE WITNESS LIST**

**AND ADMISSION OF HIS REPORTS ON THE VALUE OF THE RESIDENCES OF THE PARTIES.**

**ASSIGNMENT OF ERROR NO. V**

**THE TRIAL COURT ERRED TO THE PREJUDICE OF THE HUSBAND IN ITS DETERMINATION OF THE CLASSIFICATION AND VALUE OF THE WIFE'S AND HUSBAND'S RESIDENCE AND MARITAL DEBT AND DISTRIBUTIVE AWARD.**

{¶8} Due to the nature of the assignments of error, we elect to address them out of order, starting with Ralph's third assignment of error first.

*Third Assignment of Error*

{¶9} In his third assignment of error, Ralph argues that the trial court erred by concluding that the parties' antenuptial and separation agreements were inapplicable in determining support and an equitable distribution of marital and separate property. Specifically, Ralph asserts that because both parties entered into the antenuptial agreement in 1997 and were represented by counsel, the agreement must be enforced. With respect to the separation agreement, Ralph argues that since each party was represented by counsel at the time they entered into the agreement, and because the agreement provided that it would remain in effect even if no final decree was issued by the trial court, he was entitled to have it enforced. For the reasons that follow, we disagree.

*Trial Court's Ruling on the Agreements*

**{¶10}** The trial court addressed the parties' Antenuptial and Separation Agreements together in its final divorce decree. (Doc. No. 66 at 2). The trial court found that even though the Antenuptial Agreement may have received some "lip service" in the divorce pleadings, the agreement was never attached to or made a part of any pleading until the final hearing. (*Id.*). With regards to the Separation Agreement, the trial court found that such agreement was entered into by Ralph and Virginia as part of their dissolution proceeding and was voided by Ralph when the petition was dismissed due to his failure to appear at the final dissolution hearing. (*Id.*). Specifically, as to each agreement, the trial court ruled as follows:

> The Trial Court is of the view *that neither party has abided by either agreement and both have demonstrated their intent not to comply with the terms thereof.* The Court finds it would be inequitable to both parties to selectively enforce all or any part of either the antenuptial or separation agreements and finds both agreements inapplicable in this divorce.

(Emphasis added). (*Id.*).

*Antenuptial Agreement*

**{¶11}** "It is well settled in Ohio that public policy allows the enforcement of prenuptial agreements." *Fletcher v. Fletcher,* 68 Ohio St.3d 464, 466, 1994-Ohio-434, 628 N.E.2d 1343. The Ohio Supreme Court has held that "[s]uch agreements are valid and enforceable (1) if they have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge

-6-

and understanding of the nature, value and extent of the prospective spouse's party; and (3) if the terms do not promote or encourage divorce or profiteering by divorce." *Gross v. Gross,* 11 Ohio St.3d 99, 464 N.E.2d 500 (1984), paragraph two of the syllabus. "Although a prenuptial agreement must meet these three 'special' conditions, in all other respects, prenuptial agreements are contracts, and the law of contracts will generally apply to their application and interpretation." *Johnson v. Johnson,* 2nd Dist. Miami No. 2010 CA 2, 2011-Ohio-500, ¶ 10 citing *Fletcher* at 467. An appellate court will affirm a trial court's interpretation of such contract if the record contains competent evidence to support it. *Id.* "The primary role of the court in reviewing a contract is to ascertain and give effect to the intent of the parties." *Id.* at ¶ 11, citing *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.,* 86 Ohio St.3d 270, 273, 1999-Ohio-162, 714 N.E.2d 898 (1998). In ascertaining the intent of the parties, the court must look to the language of the contract. *Id.* If the contract language is clear and unambiguous, no interpretation or construction is necessary, however, if the contract is susceptible to two or more reasonable interpretations, it is ambiguous. *Id.* "Whether a contract's terms are clear or ambiguous is a question of law for the court." *Id.* citing *Westfield Ins. Co. v. HULS Am., Inc.,* 128 Ohio App.3d 270, 291, 714 N.E.2d 934 (10th Dist.1998).

{¶12} "The parties to an antenuptial agreement are in a fiduciary relationship to one another and, thus, are under a mandatory duty to act in good faith with a high

degree of fairness and disclosure of all circumstances which materially bear on the antenuptial agreement." *Rowland v. Rowland,* 74 Ohio App.3d 415, 420, 599 N.E.2d 315 (4th Dist.1991) citing *Gross, supra. See also, Cohen v. Estate of Cohen,* 23 Ohio St.3d 90, 491 N.E.2d 698 (1986). "'Although antenuptial agreements are not *per se* invalid, they must meet certain minimum standards of good faith and fair dealing. If the agreement is fair and reasonable under the circumstances, it will be deemed enforceable.'" *Id.* quoting *Zimmie v. Zimmie,* 11 Ohio St.3d 94, 98, 464 N.E.2d 142 (1984).

{¶13} As an initial matter, we find that while both Ralph and Virginia filed separate and competing complaints for divorce, neither party attached a copy of the Antenuptial Agreement to their divorce complaint. Further, Ralph failed to attach the Antenuptial Agreement to his answer to Virginia's complaint for divorce and neither party addressed the Antenuptial Agreement in any substantive fashion prior to the filing of their pretrial statements. (Doc. No. 60; Doc. No. 63). More specifically, neither Ralph nor Virginia filed a motion with the trial court, *at any time,* to enforce or challenge the validity of the Antenuptial Agreement. As such, the trial court's characterization that the parties' only gave "lip service" to the antenuptial agreement is on target and representative of the parties' lackadaisical approach to the enforcement of their antenuptial agreement.

{¶14} Nevertheless, the trial court was on notice that an antenuptial agreement existed between the parties presenting property issues for it to consider.

{¶15} However, as noted by the trial court in its Decision, Virginia and Ralph only sought selective enforcement of their prenuptial agreement. As such, the trial court stated:

> The Court is of the view that neither party has abided by either agreement and both have demonstrated their intent not to comply with the terms thereof. The Court finds it would be inequitable to both parties to selectively enforce all or any part of either the Antenuptial or Separation Agreements, and finds both agreements inapplicable in this divorce.

(Doc. No. 66 at 2).

{¶16} "It is a fundamental rule of equity that he who seeks equity should not be allowed to profit from his own wrongdoing." *Langer v. Langer,* 123 Ohio App.3d 348, 355, 704 N.E.2d 275 (2nd Dist.1997), *cause dismissed,* 80 Ohio St.3d 1473, 687 N.E.2d 470 (1997) citing *Klaustermeyer v. Cleveland Tr. Co.,* 89 Ohio St. 142, 148, 105 N.E. 278 (1913). In conducting our review of whether or not the trial court erred by declaring the parties' Antenuptial Agreement "inapplicable," we are guided by the principles set forth by the Ohio Supreme Court in *Cohen* that the requirements of good faith and fair dealing in the making of an Antenuptial Agreement also exist in the performance of it. *Cohen, supra.* And in this matter the trial court determined that neither Virginia nor Ralph had abided by its terms.

Thus, we find the trial court acted within its discretion to determine the parties' Antenuptial Agreement was "inapplicable." Accordingly, we overrule this portion of Ralph's Assignment of Error.

*Separation Agreement*

**{¶17}** "A separation agreement is a contract and its interpretation is subject to the same rules of construction as other contracts." *Urban v. Spriestersbach,* 3rd Dist. Seneca No. 13-94-26, 1995 WL 81975, * 2. "'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and consideration.'" *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16 quoting *Perlmuter Printing Co. v. Strome, Inc.,* 436 F. Supp. 409, 414 (N.D.Ohio 1976). "Issues concerning contracts, including separation agreements, are subject to a *de novo* standard of review on appeal." *Avakian v. Avakian,* 11th Dist. Portage No. 2014-P-0036, 2015-Ohio-2299, ¶ 27. Under a *de novo* standard of review, "an appellate court may substitute, without deference, its judgment for that of the trial court." *Arnett v. Precision Strip, Inc.,* 2012-Ohio-2693, 972 N.E.2d 168, ¶ 10 (3rd Dist.).

**{¶18}** However, "R.C. 3105.10(B)(2) provides the authority for trial courts to *enforce* a separation agreement, stating: 'a separation agreement that was

voluntarily entered into by the parties may be enforceable by the court of common pleas *upon the motion of either party to the agreement, if the court determines that it would be in the interests of justice and equity* to require the enforcement of the separation agreement.'" (Emphasis added). *McAninch v. McAninch,* 3rd Dist. Union No. 14-02-10, 2002-Ohio-5580, ¶ 9 quoting R.C. 3105.10(B)(2). "Consequently, the decision to enforce a separation agreement is discretionary and will not be reversed on appeal absent an abuse of discretion." *Id.* citing *Schneider v. Schneider,* 110 Ohio App.3d 487, 491, 674 N.E.2d 769 (11th Dist.1996). "The term 'abuse of discretion' implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "A trial court will be found to have abused its discretion when its decision is * * * unreasonable, not supported by the evidence, or is grossly unsound." *Mackenbach v. Mackenbach,* 3rd Dist. Hardin No. 6-11-03, 2012-Ohio-311, ¶ 7.

{¶19} After reviewing the record, we cannot say that the trial court abused its discretion by concluding that the parties' behavior during the divorce proceedings demonstrated a lack of willingness to be bound by or comply with the terms contained in their Separation Agreement. Again, we note that the parties' Separation Agreement was filed in Logan County as part of a dissolution proceeding and was ultimately dismissed because Ralph failed to appear at the final hearing and

proceed with the dissolution[1]. (10/31/2016 Tr., Vol. I, at 46). Further, Ralph's following testimony at trial provides evidence of his behavior and lack of intent to be bound by or comply with the Separation Agreement:

> **Q. (Cross Examination by Attorney Greco) Okay. So, let me ask you this. Is it true that you did not want to enforce the Separation Agreement at the dissolution hearing?**
>
> **A. (Ralph) I got to thinking that way after I was into it for awhile.**
>
> **Q. Okay. And so, as far as what you're asking the Court to do, are you asking the Court to enforce that now?**
>
> **A. I don't know.**
>
> **Q. You don't know?**
>
> **A. No.**

(11/01/2016 Tr., Vol. II, at 87). In light of this testimony at trial and the fact that the dissolution proceeding was dismissed because Ralph failed to appear at the final hearing, his argument that the Separation Agreement should be enforced is disingenuous.

{¶20} Further, and as we noted above, a person "who seeks equity should not be allowed to profit from his own wrongdoing." *Langer, supra.* Ralph's failure to appear for the dissolution hearing in Logan County supports the trial court's finding

---

[1] Outside of the Separation Agreement and the testimony produced at the final hearing regarding the dissolution in Logan County, we are not privy to the record in the dissolution case.

that he had no intent to comply with the Separation Agreement. As such, the trial court chose not to selectively enforce the Separation Agreement of the parties.

**{¶21}** Accordingly, we overrule Ralph's third assignment of error.

*First Assignment of Error*

**{¶22}** In his first assignment of error, Ralph asserts that the trial court erred by denying his request for temporary support and by only awarding him spousal support in the amount of $250 per month. For the reasons that follow, we disagree.

*Standard of Review*

**{¶23}** "'As part of a divorce proceeding, a trial court has equitable authority to divide and distribute the marital estate, and then consider whether an award of sustenance alimony would be appropriate.'" *Heitzman v. Heitzman,* 3rd Dist. Crawford No. 3-05-11, 2005-Ohio-4622, ¶ 3 quoting *Kunkle v. Kunkle,* 51 Ohio St.3d 64, 67, 554 N.E.2d 83, (1990). "A trial court's order granting or denying spousal support will not be reversed on appeal absent an abuse of discretion." *Cox v. Cox,* 3rd Dist. Logan No. 8-06-17, 2007-Ohio-5769, ¶ 15. The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

*Analysis*

**{¶24}** In our review of the record, we find that the trial court did not abuse its discretion in its spousal support award of $250 per month for 36 months commencing February 1, 2017. In determining whether a spousal support award is appropriate and reasonable, a trial court must consider the statutory factors listed under R.C. 3105.18(C)(1). R.C. 3105.18(C)(1) requires consideration of:

> (a)   The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
> (b)   The relative earning abilities of the parties;
> (c)   The ages and the physical, mental, and emotional conditions of the parties;
> (d)   The retirement benefits of the parties;
> (e)   The duration of the marriage;
> (f)   The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
> (g)   The standard of living of the parties established during the marriage;
> (h)   The relative extent of education of the parties;
> (i)   The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
> (j)   The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
> (k)   The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
> (l)   The tax consequences, for each party, of an award of spousal support;

-14-

(m)   The lost income production capacity of either party that resulted from that party's marital responsibilities;
(n)   Any other factor that the court expressly finds to be relevant and equitable.

(Doc. No. 66 at 6); R.C. 3105.18(C)(1).

**{¶25}** Herein, the trial court made the following findings in support of its award of spousal support:

> Plaintiff's income is about $7,200 per month while Defendant's income is about $5,500 per month. The length of the marriage is 17 years, 9 months due to the *de facto* termination date of April 1, 2013. The Defendant is 25 years older than the Plaintiff, however, both are able to work as real estate agents and have no relevant impairments to work. According to the testimony, the parties' standard of living during the marriage was beyond their means. The parties' education is similar and neither has any retirement. The Defendant's assets and liabilities may be somewhat better than Plaintiff's due to Plaintiff's debt situation but taking all factors into consideration, the Court believes some spousal support for some time is reasonable and appropriate. Therefore, the Court orders the Plaintiff to pay the Defendant spousal support in the amount of $250.00 per month for 36 months commencing February 1, 2017. The Court does not retain jurisdiction over the amount or duration of spousal support, however, the same will termination upon the death of either Plaintiff or Defendant.

(Doc. No. 66 at 6). In our review of the trial court's award of spousal support we find that the trial court considered the required statutory factors under R.C. 3105.18(C)(1)(a)-(n), that contained a sufficient review of the spousal support factors under the statute. Thus, we find that the trial court considered the statutory factors with sufficient analysis to support its spousal support order. *Munroe v. Munroe,* 119 Ohio App.3d 530, 541, 695 N.E.2d 1155 (8th Dist.1997).

Furthermore, as Ralph had sufficient income from farming and from working as a realtor during the pendency of the divorce, we cannot say that the trial court abused its discretion in denying him temporary spousal support, as Ralph failed to demonstrate a need justifying an award of temporary spousal support. Accordingly, we find that the trial court did not abuse its discretion in its award of spousal support and denial of temporary support.

{¶26} The decision of whether to retain jurisdiction to modify spousal support post-decree is a matter within the Domestic Relations Court's discretion. *Smith v. Smith,* 6th Dist. Lucas No. L-98-1027, 1998 WL 904941, *1, citing *Johnson v. Johnson,* 88 Ohio App.3d 329, 331, 623 N.E.2d 1294 (5th Dist.1993). As previously noted, the trial court engaged in an analysis of the issue of spousal support, indicating the weight it was giving to each statutory factor in fashioning the spousal support award. (Doc. No. 66 at 6).

{¶27} For the reasons discussed, we are unpersuaded by Ralph's argument that the trial court abused its discretion in making his award of spousal support under the facts and circumstances of this case, and we find no reversible error in the decision not to retain jurisdiction on the issue. For the reasons stated herein, we overrule Ralph's first assignment of error.

*Second Assignment of Error*

**{¶28}** In his second assignment of error, Ralph asserts that the trial court erred by failing to make findings of fact as to business assets: by failing to identify and classify those assets; and by failing to credit Ralph for the transfer of assets to Virginia in its distributive award. Specifically, Ralph asserts that because he gifted Virginia his business when he was 72, and because Virginia fired him from the business when he was 79, he (Ralph) is entitled to a credit in the trial court's distributive award.

**{¶29}** R.C. 3105.171(B) requires that "[i]n divorce proceedings, the court shall. . . determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." R.C. 3105.171(B). A trial court has broad discretion to equitably divide marital property. *Martin v. Martin,* 18 Ohio St.3d 292, 294, 480 N.E.2d 1112 (1985) citing *Berish v. Berish,* 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982).

**{¶30}** On her marital balance sheet, Virginia listed her business interests as: Consultants Realty, LLC; Excel Realty; N.W. Select Title, LLC; and Virginia Golan, LLC. (Ex. No. 39). Virginia testified that the first three business interests are essentially investments. (10/31/2016 Tr., Vol. I, at 86-87). Virginia also testified that Virginia Golan, LLC is a holding company that holds investments and

that apart from the investments, Virginia Golan, LLC has no independent value. (*Id.* at 87).

{¶31} While Ralph argues that Virginia's business as a realtor is a "business" subject to valuation and division, Virginia's testimony demonstrated that there is no independent value to her business as a relator. More importantly, Ralph failed to present any contrary evidence demonstrating a value to Virginia's business activity as a realtor that could be subject to division.

{¶32} Where a party fails to present evidence regarding the value of an asset, that party waives the right to appeal the trial court's valuation of the asset. *Dindal v. Dindal,* 3rd Dist. Hancock No. 5-09-06, 2009-Ohio-3528, ¶ 9; *see also Hruby v. Hruby,* 7th Dist. Columbiana No. 93-C-9, 1997 WL 321608, *4 (June 11, 1997). "Where a party fails to present evidence relative to property division, the party has essentially forfeited its argument as to division." *Shelter v. Shelter,* 5th Dist. Stark No. 2012 CA 00126, 2013-Ohio-5860, ¶ 14. "If a party fails to present sufficient evidence of valuation, that party has presumptively waived the right to appeal the distribution of those assets because the trial court can only make decisions based on the evidence present." *Kautz v. Kautz,* 5th Dist. Stark No. 2011CA00034, 2011-Ohio-6547, ¶ 16. Further, a party who fails to present evidence as to the value of the asset is precluded from raising the issue on appeal under the invited error doctrine as well. *Dindal, supra.* Because Ralph presented no evidence as to the

alleged value of Virginia's business as a realtor, and Virginia testified that there is no such value, the trial court did not err by determining that Virginia's business as a realtor is not an asset with a value that can be divided.

**{¶33}** Additionally, Ralph's argument that the trial court erred in failing to equalize the value of the business interests between the parties is without merit. "Although an equal division is a starting point when allocating marital property and debt, a decision need not be equal to be equitable." *Dindal, supra.* The trial court specifically found "little disparity between the parties' values as related to personal property and business interest." (Doc. No. 66 at 4). The trial court then equitably divided the parties' personal property and business assets, awarding each party bank accounts, furniture, household goods, motor vehicle, insurance, investments, and retirement accounts, and business interest in his or her possession. (*Id.* at 4). "The trial court is not required by R.C. 3105.171 to divide marital property equally if an equitable division of property would be more appropriate." *Szerlip v. Szerlip,* 129 Ohio App.3d 506, 514, 718 N.E.2d 473 (5th Dist.1998). Accordingly, the trial court was within its discretion to divide the property in equitable fashion. Having found no error prejudicial to Ralph, we accordingly overrule his second assignment of error.

*Fourth Assignment of Error*

**{¶34}** In his fourth assignment of error, Ralph alleges that the trial court erred when it denied his motion to add an expert to his witness list together with the expert's reports on the values of the residences of the parties. Specifically, Ralph asserts that the trial court should have granted his October 11, 2016 "Motion for Leave to Add Expert Witness for Trial." We disagree.

*Standard of Review*

**{¶35}** "A trial court has broad discretion in the admission and exclusion of evidence, and will not be reversed absent an abuse of that discretion which materially prejudices a party." *Spicer v. Spicer,* 3rd Dist. Marion No. 9-01-13, 2001-Ohio-2137, *1 citing *Krischbaum v. Dillon,* 58 Ohio St.3d 58, 66, 567 N.E.2d 1291 (1991). Additionally, "the decision of whether to exclude a witness's testimony based on a failure to disclose the witness's name lies within the trial court's sole discretion." *State v. Valdez,* 3rd Dist. Marion No. 9-16-01, 2017-Ohio-241, ¶ 114. The term 'abuse of discretion' implies that the court's attitude is "unreasonable, arbitrary, or unconscionable." *Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "A trial court will be found to have abused its discretion when its decision is * * * unreasonable, not supported by the evidence, or is grossly unsound." *Mackenbach,* 3rd Dist. Hardin No. 6-11-03, 2012-Ohio-311, ¶ 7.

*Analysis*

**{¶36}** In its May 5, 2016 entry, the trial court issued an order setting: "June 20, 2016 as the disclosure date for witnesses; August 19, 2016 as the discovery cut-off date and September 30, 2016 as the final pretrial date." (Doc. No. 61). Additionally, the May 5, 2016 entry notified the parties that the scheduled dates were "*inflexible and would not be changed* except on Motion and for good cause shown." (*Id.*). On October 11, 2016, Ralph filed a "Motion for Leave to Add Expert Witness for Trial," which the trial court overruled on October 20, 2016 stating:

> Defendant has failed to comply with the June 20, 2016 disclosure date; the August 19, 2016 discovery cut-off date and made no mention of the need for an appraisal at the September 30, 2016 final pretrial. Nowhere in his motion does he provide good cause for changing the inflexible dates set forth in the May 5, 2016 Order of the Court. To allow the same would unfairly prejudice the party who has complied with the dates in the May 5, 2016 order.

(Doc. No. 56, 61).

**{¶37}** In addition to having broad discretion to admit or exclude evidence, a trial court also has discretion to set a deadline by which the parties must disclose their expert witnesses and to enforce its order by excluding all testimony from experts not disclosed by the deadline. *Huffman v. Pioneer Basement Water Proofing Co.,* 5th Dist. Tuscarawas No. 2007 AP 08 0048, 2008-Ohio-7032, ¶ 33.

**{¶38}** Ralph's argument directs us to the trial court's Local Rule 18.07, entitled "Expert Discovery Cut Off Date, Notice of Depositions, and Request for

Appointment of a Guardian ad Litem," which states as follows: "[i]n all divorce actions, *unless otherwise set by the Court* for good cause shown, any valuation of property by an expert * * * shall be submitted for expert determination within 90 days of the filing of the Answer unless extended or otherwise set by the court by pretrial order." (Emphasis added). However, as is evident by the record, the trial court deviated from the local rule and scheduled its own dates for discovery and witness disclosure. (*See* Doc. No. 61). Thus, because the local court rule clearly permitted the trial court to set its own cutoff dates for discovery and witness disclosure, we cannot say that the trial court abused its discretion by overruling Ralph's motion to add an expert witness to his witness list that was filed shortly before trial and well after the discovery deadline passed. *See Mynes v. Brooks,* 4th Dist. Scioto No. 08CA3211, 2009-Ohio-5017, ¶ 41 (trial court did not abuse its discretion in excluding an expert witness that was disclosed eleven days before trial); *Vaught v. Cleveland Clinic Found.,* 98 Ohio St.3d 485, 2003-Ohio-2181, 787 N.E.2d 631, ¶ 12 (trial court did not abuse its discretion in not allowing expert witness to testify when his status as an expert witness was revealed a week before trial). Thus, since Ralph failed to comply with the trial court's pre-trial orders of May 5, 2016, we find no abuse of discretion by the trial court in overruling Ralph's motion for leave to add an expert witness.

{¶39} Ralph's fourth assignment of error is overruled.

*Fifth Assignment of Error*

**{¶40}** In his final assignment of error, Ralph asserts that the trial court erred in its valuations and classification of the parties' residences; the amount of marital debt; and the distributive award.  Ralph presents four separate issues for our review under this assignment of error, specifically asserting that: (1) the *de facto* termination of the marriage was April 1, 2013, and as a result, he is entitled to have the 2013 valuations of the parties' residences used to determine the equity in the homes; (2) he is entitled to have his inherited property treated as separate property; (3) he is entitled to a credit of $70,000 for his payment of a marital debt made after the *de facto* termination date; and (4) since the trial court's distributive award forces him to sell his residence, he is entitled to have the cost of its sale taken into consideration in determining the amount of the distributive award.  We will discuss each issue, in turn.

*Valuation of Property*

**{¶41}** Ralph asserts in his first issue presented under this assignment of error that the trial court should have used the 2013 valuations of his and Virginia's residences to determine the equity.  Specifically, Ralph claims that: the trial court erred by using property evaluations from 2016 instead of 2013; the trial court erred by deflating the equity in Virginia's home; and the trial court erred by inflating the equity in his home.  For the reasons that follow, we disagree.

*Standard of Review*

**{¶42}** "In making an equitable division of property, a trial court must first determine the value of marital assets." *Meeks v. Meeks,* 10th Dist. Franklin No. 05AP-315, 2006-Ohio-642, ¶ 8. "The valuation of property in a divorce case is a question of fact." *Schwarck v. Schwarck,* 3rd Dist. Auglaize No. 2-11-24, 2012-Ohio-3902, ¶ 27 citing *Herron v. Herron,* 3rd Dist. Allen No. 1-04-23, 2004-Ohio-5765, ¶ 23. "Accordingly, a trial court's decision pertaining to the valuation of property will be reviewed under a manifest weight of the evidence standard and will not be reversed so long as it is supported by some competent and credible evidence." *Id.*

*Analysis*

**{¶43}** R.C. 3105.171 governs property division in divorce actions. It requires no specific way for the trial court to determine value. *Meeks,* at ¶ 8. The trial court, in its Decree, found that "at the time of the *de facto* date of the termination of the marriage, the value of the Restoration Drive property (belonging to Virginia) [was] $166,500 and the value of the Maple Ridge Road property (belonging to Ralph) [was] $415,840." Doc. No. 66 at 3. The trial court further determined that the net equity as of the date of the *de facto* termination of the

marriage of the Restoration Drive property was $16,000 and of the Maple Ridge Road property was $100,840, respectively.[2] *Id.* at 3-4.

**{¶44}** Despite the realization that the trial court may have mis-added the Restoration Drive equity by $500 as set forth in Plaintiff's Exhibit No. 39, such miscalculation (of $500) is insufficient to sustain Ralph's argument that the trial court's valuation of property was against the manifest weight of the evidence. We find that the trial court's final entry specifically directs us to the evidence considered to support its valuations. Furthermore, we note that while Ralph cites *Burkhart v. Burkhart* in support of his argument that the trial court's ruling on the valuation of the properties was incorrect, we find *Burkhart* is distinguishable from the case before us. *See, Burkhart v. Burkhart,* 2013-Ohio-157, 986 N.E.2d 45, ¶¶ 26-29 (10th Dist.). In *Burkhart* the parties entered into a stipulation as to the payment of marital debt and the assets from which the obligation originated. With such stipulation the amounts agreed to by the parties were conclusively proven, and bound the trial court to such values. *See generally, State v. Robbins,* 176 Ohio St. 362, 364, 199 N.E.2d 742 (1964) (finding that stipulations are binding upon the parties to civil actions). That is not what occurred here, as the parties never

---

[2] Plaintiff's Exhibit No. 39, entitled "Division of Marital Property: Property division report for Virginia Golan-Elliot and G. Ralph Elliot," recites the marital equity in the Restoration Drive property as $16,500 and the marital equity in the Maple Ridge Road at $100,840.

stipulated to the values of their properties or the respective financial obligations to each property, which resulted in the trial court rendering a factual finding as to each.

{¶45} Further, Virginia offered evidence of the property values through an expert and through the county auditor, as opposed Ralph's personal opinion. (*See,* Pl.'s Ex. Nos. 1, 2, and 39; 10/31/2016 Tr., Vol. I, at 192). Ralph's failure to present greater evidence other than his opinion, (as to the 2013 values of the marital property) restricts his ability to challenge the trial court's determination of the values of the property. *See generally, Dindal v. Dindal,* 3rd Dist. Hancock No. 5-09-06, 2009-Ohio-3528, ¶ 9. Accordingly, we find no merit as to Ralph's first issue presented under this assignment of error.

*Classification of Property*

{¶46} Ralph asserts in the second issue to this assignment of error that the property he inherited during the course of the marriage should have been treated as separate property by the trial court. We disagree.

*Standard of Review*

{¶47} An appellate court reviews the trial court's classification of property as marital or separate property under a manifest weight of the evidence standard. *Brandon v. Brandon,* 3rd Dist. Mercer No. 10-08-13, 2009-Ohio-3818, ¶ 11 citing *Gibson v. Gibson,* 3rd Dist. Marion No. 9-07-06, 2007-Ohio-6965, ¶ 26 quoting *Eggeman v. Eggeman,* 3rd Dist. Auglaize No. 2-04-06, 2004-Ohio-6050, ¶ 14.

"Accordingly, the trial court's judgment will not be reversed if the decision is supported by some competent, credible evidence." *Gibson, supra.* "In determining whether competent, credible evidence exists, '[a] reviewing court should be guided by a presumption that the findings of the trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, voice inflection, and use those observations in weighting the credibility of the testimony." *Id.*

*Analysis*

{¶48} Ralph asserts that the trial court erred when it classified his residence as marital property as opposed to separate property. It is not disputed that Ralph inherited a large tract of land from his mother during the course of the marriage. (11/01/2016 Tr., Vol. II, at 12). After such inheritance and during the marriage Ralph took out a loan for $600,000 to buy out four of his five siblings' interests in the land. (*Id.* at 15). After buying out such interests, Ralph and his fifth sibling (his sister Sherry) subdivided the property into lots and sold them. (*Id.* at 16). Ralph realized a profit from the process. He also chose to keep part of the inherited land, a 26-acre lot, upon which he and Virginia built a home (Maple Ridge Property). (*Id.* at 21). Construction of the Maple Ridge home was finished in September, 2010. Virginia lived in the home briefly, moved out, and then returned to the residence

where she remained until 2013. (*Id*.) The trial court determined the property was marital, Ralph argues it should be separate.

**{¶49}** In our review of the record, we find that Virginia played a role in increasing the value of the inherited property. Virginia produced into evidence an Open Deed Mortgage, dated on April 26, 2001, listing her and Ralph (together with Ralph's sister and her husband) as mortgagors on the $600,000 loan that bought out the interest of Ralph's four siblings. (10/31/2016 Tr., Vol. I, at 64; Pl. Ex. No. 3-D). In addition to that Mortgage Deed, Virginia also introduced a General Warranty Deed in which her and Ralph's interest in the real property was transferred into a limited liability company (LLC), created by Ralph and his sister to hold the profits of the sale of the inherited land. (*Id.* at 65, Pl. Ex. No. 3-F). Further, Virginia testified that she hired the surveyor to divide the inherited real estate into lots and (that) she had actively pursued the sale of the lots through her real estate brokering skills. (*Id.* at 67-68). Furthermore, after the divided lots were sold, the LLC issued a quit-claim deed of the 26-acre lot to Ralph and Virginia.[3] (*Id.* at 70-71; Pl. Ex. No. 3-H). Virginia also introduced into evidence a second mortgage, executed by her and Ralph on December 11, 2009 for $250,000, to build the marital residence on the lot. (*Id.* at 72; Pl. Ex. No. 3-K). Virginia also produced a Mortgage and a Note, both dated July 29, 2013, which was executed and signed by both Ralph and

---

[3] This lot eventually became the Maple Ridge Road residence.

Virginia. (*Id.* at 72-75; Pl. Ex. Nos. 3-M, 3-N). These documents represented the parties refinancing (of their 2009 mortgage) on the property for improvements.

{¶50} In its ruling on the classification of the Maple Ridge Road property (as marital or separate) the trial court determined that:

> The Defendant [Ralph] inherited a fractional share of a larger tract of land upon which the Maple Ridge Road home is located several years ago but during the parties' marriage. Over the years, Plaintiff [Virginia] and Defendant acquired additional fractional interests which were divided and sold all but the 26+ acres on which the Maple Ridge home is located. Since both parties were active realtors, they sold these lots and other real estate and with those and other proceeds generated by both parties during the marriage, co-mingled such proceeds so as to make them equitably untraceable. Since the other property, Restoration Drive [belonging to Virginia], was acquired during the marriage and the Maple Ridge property was built and maintained during the marriage by the efforts of both parties, the Court finds both Restoration Drive and Maple Ridge Road, properties are marital property.

(Doc. No. 66 at 3).

{¶51} In his appeal, Ralph argues that because his residence (the Maple Ridge Road property) was constructed on part of the land that he inherited from his mother, the property is separate property, subject to R.C. 3105.171(A)(6)(a)(1).

{¶52} R.C. 3105.171(A)(6)(a)(1) states: "'[s]eparate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following: An inheritance by one spouse by bequest, devise, or descent during the course of the marriage.'" R.C. 3105.171(A)(6)(a)(1). However, R.C. 3105.171(A)(6)(b) provides that: "the commingling of separate

property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).

**{¶53}** "Thus, traceability is the key to determining whether separate property has lost its separate character after being commingled with marital property." *Reed v. Reed,* 3rd Dist. Allen No. 1-09-63, 2010-Ohio-4550, ¶ 10. "The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Id.* citing *Peck v. Peck,* 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist. 1994). A "preponderance of the evidence means the greater weight of the evidence that is necessary to destroy the equilibrium." *Id.* citing *State v. Stumpf,* 32 Ohio St.3d 95, 102, 512 N.E.2d 598 (1987). "It is that proof which leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence." *Id.*

**{¶54}** After reviewing the trial court's determination that the Maple Ridge property was marital, we find that Ralph failed to prove, by a preponderance of the evidence, that the property could be traced back to his separate inheritance. Specifically, Ralph failed to produce *any* evidence to the trial court demonstrating that the portion of his inherited land retained its separate character. We further find that competent and credible evidence exists in the record supporting the trial court's determination that the inherited land was comingled and was "equitably

untraceable." Thus, we find Ralph's second issue under this assignment to be without merit.

*Division of Property*

**{¶55}** In the third issue presented under this assignment, Ralph asserts that he was entitled to a credit of $70,000 for money he used to pay off the 2009 mortgage because the refinancing occurred after the *de facto* termination date of the marriage.

**{¶56}** In regards to the division of property in a divorce, the trial court is granted broad discretion in determining how to award an equitable division according to the circumstances of each case before it, and therefore the division of property in a divorce action shall be reviewed under an abuse of discretion standard. *DeWitt v. DeWitt,* 3rd Dist. Marion No. 9-02-42, 2003-Ohio-851, ¶ 10. In determining whether the trial court's decision amounts to an abuse of discretion, it must be found that the court's attitude was unreasonable, arbitrary, or unconscionable. *Id.* The term 'abuse of discretion' implies that the court's attitude is "unreasonable, arbitrary, or unconscionable." *Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "A trial court will be found to have abused its discretion when its decision is * * * unreasonable, not supported by the evidence, or is grossly unsound." *Mackenbach,* 3rd Dist. Hardin No. 6-11-03, 2012-Ohio-311, ¶ 7.

**{¶57}** Specifically, Ralph alleges that had the trial court correctly classified the Maple Ridge Road property as separate property, and had properly valued the property based upon his 2013 valuation (which Ralph failed to produce at trial) the trial court should have granted him a credit of $70,000 (the amount he paid to pay off the mortgage that was refinanced after the *de facto* marriage termination date) from its distributive award. We disagree. Ralph's argument fails (to the extent that we are able to construe this issue as a legal argument) because he did not meet his burden in proving that the Maple Ridge Road property was separate property. Further, Ralph did not present competent and credible evidence to the trial court regarding the 2013 value of the Maple Ridge Road property. *See, Reed,* 3rd Dist. Allen No. 1-09-63, 2010-Ohio-4550, ¶ 10. Thus, his argument as to this issue fails.

**{¶58}** Accordingly, we find the third issue presented under this assignment to be without merit.

### *Sale of Ralph's Residence*

**{¶59}** In Ralph's final issue under assignment of error number five, Ralph argues that the distributive award can only be paid by sale of the Husband's residence, and as such, he is entitled to have the cost of the sale taken into consideration in determining the distributive award. However, after a thorough review of the record, we find no order from the trial court directing Ralph to sell his residence, and further find no evidence to support Ralph's argument that he can only

pay the distributive award through the sale of his residence. Accordingly, we dismiss this issue and overrule Ralph's fifth assignment of error in its entirety.

{¶60} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**