[Cite as *Ganues v. Ganues*, 2019-Ohio-1285.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

CYNTHIA L. GANUES,
NKA ARMSTRONG,

      PLAINTIFF-APPELLEE,               CASE NO.  13-18-36

      v.

JIMMIE L. GANUES, JR.,             O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Domestic Relations Division
Trial Court No. 06 DR 0106

Judgment Affirmed

Date of Decision:    April 8, 2019

**APPEARANCES:**

    *James W. Fruth* **for Appellant**

    *John M. Kahler, II* **for Appellee**

**SHAW, J.**

**{¶1}** Defendant-appellant, Jimmie L. Ganues ("Jimmie"), appeals the October 23, 2018 judgment of the Seneca County Court of Common Pleas overruling his objections to the magistrate's decision which recommended reducing his spousal support payment to plaintiff-appellee, Cynthia L. Ganues, nka Armstrong ("Cynthia"). On appeal, Jimmie argues that the trial court erred when it did not terminate his spousal support obligation because Cynthia has remarried.

*Relevant Facts and Procedural Posture*

**{¶2}** The parties were married in 1979. During the marriage, Jimmie was employed outside of the home. The parties agreed that Cynthia would not be employed to spare them the expense of child care for their four children. Jimmie retired from the military in 1999 after twenty years of service and began receiving pension payments, which the record indicates is $20,000.00 annually. Jimmie continued to work for a private employer thereafter.

**{¶3}** In 2006, the parties divorced. The parties' June 13, 2006 Decree of Divorce included the following language with regard to spousal support:

> **3. In accordance with the parties' Separation Agreement that was filed in this case, Plaintiff is to receive from Defendant $1500.00 per month in spousal support from Defendant for as long as Defendant has a child support obligation. Once Defendant no longer has a current child support obligation, then Defendant shall pay to Plaintiff the sum of $2,000.00 per month for life. The spousal support obligation of Defendant to pay to Plaintiff shall**

> **cease on the death of either of the parties. This Court retains continuing jurisdiction to review and modify spousal support.**
>
> **\* \* \***
>
> **5. The Court adopts the Separation Agreement as filed with this court as to all other marital property and all other agreements of the parties.**

(Doc. No. 24). With respect to Jimmie's military pension, the Separation Agreement incorporated into the divorce decree specified that:

> **Husband shall continue to receive the payments from his military pension. Husband shall keep Wife named as the beneficiary of said pension in the event of his death. It is the understanding and intention of the parties that Wife's spousal support stands in lieu of any present division of Husband's military pension.**

(Doc. No. 10, Article 11). According to the divorce decree, the child and spousal support payments were collected through the Seneca County Child Support Enforcement Agency ("SCCSEA"). The record indicates that in 2011, Jimmie's child support order terminated on account of the parties' youngest child reaching the age of majority. However, the record also indicates at this time that Jimmie had accumulated arrearages on his spousal support payments in the amount of $24,431.58.

{¶4} In December 2011, Cynthia married her current husband.[1] Jimmie subsequently filed a motion with the SCCSEA to terminate his spousal support

---

[1] The record also indicates that Cynthia was remarried for the first time in 2006, but the marriage was short-lived.

payments to Cynthia on the basis of her remarriage. Jimmie also requested that the arrearage in spousal support be "cleared and paid in full." (Doc. No. 32). After a hearing before the court, the motion was denied. The trial court subsequently issued several orders permitting the SCCSEA to apply lump sum amounts Jimmie was owed from his employer to the arrearage in spousal support. The record indicates that as of February 22, 2017, Jimmie had an arrearage in spousal support of $18,583.55.

{¶5} On August 2, 2017, Jimmie filed a "Motion to Terminate or Modify Spousal Support Obligation; and to Escrow Support Payments Pending Determination of Motion."

{¶6} On August 18, 2017, Cynthia filed a motion for contempt citing Jimmie's failure to comply with the parties' divorce decree by not timely paying the spousal support obligation specified therein.

{¶7} On January 16, 2018, the magistrate held a final hearing on the matter, where both Cynthia and Jimmie testified and provided financial documentation.[2] After the hearing, the magistrate requested the parties submit their proposed findings of fact and conclusions of law.

{¶8} On February 21, 2018, the magistrate issued a decision recommending a modification of the spousal support ordered in the divorce decree. Specifically,

---

[2] Prior to the hearing, Cynthia moved to dismiss her motion for contempt. The trial court dismissed Cynthia's motion without prejudice.

the magistrate recommended that Jimmie's spousal support obligation should be reduced to "monthly installments of $833.33, plus processing fees, which will total $10,000.00 per year, for life." (Doc. No. 84 at ¶ 25). The magistrate also recommended that the trial court retain continuing jurisdiction to modify the spousal support amount in the future.

{¶9} Jimmie filed objections to the magistrate's decision arguing that the magistrate's recommendation to reduce his spousal support obligation was inappropriate and unreasonable in light of the parties' current financial situation and Cynthia's remarriage. Jimmie contended that the termination of his spousal support obligation would be more equitable.

{¶10} On October 23, 2018, the trial court overruled Jimmie's objections and issued a judgment entry granting Jimmie's motion to modify his spousal support obligation as recommended by the magistrate. The trial court also specifically retained jurisdiction to review and modify the spousal support.

{¶11} Jimmie filed this appeal, asserting the following assignment of error.

**THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO TERMINATE APPELLANT'S SPOUSAL SUPPORT OBLIGATION BECAUSE APPELLEE HAS BEEN MARRIED TWICE SINCE THE ORIGINAL ORDER, AND BECAUSE MAINTAINING THE ORDER MEANS APPELLANT IS SUPPORTING BOTH APPELLEE'S [SIC] EX-WIFE, BUT ALSO HER HUSBAND.**

{¶12} In his sole assignment of error, Jimmie claims the trial court erred when it reduced rather than terminated his spousal support obligation to Cynthia. Specifically, Jimmie argues that a "no support obligation remains appropriate and reasonable under R.C. 3105.18" because Cynthia is now remarried. (Appt. Br. at 19). Jimmie contends that "it is simply unfair and unjust for [him] to be required to support his ex-wife when she becomes another man's wife, especially when continuing his spousal support obligation means he is also supporting his ex-wife's husband." (Id.).

*Legal Standard*

{¶13} We review a trial court's decision regarding spousal support for an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142 (1989). An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court may not simply substitute its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶14} In exercising its discretion to modify a spousal support award, the trial court must determine: (1) that the divorce decree contained a provision specifically authorizing the court to modify the spousal support, and (2) that the circumstances of either party have changed. R.C. 3105.18(E). Furthermore, the change in

circumstances must be substantial enough to make the existing award no longer reasonable and appropriate and the change in circumstances must not have been taken into account by the parties or the court at the time when the existing award was established or last modified. R.C. 3105.18(F)(1)(a) and (b).

{¶15} According to R.C. 3105.18(F)(1), "a change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses, or other changed circumstances * * *." In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors under R.C. 3105.18(C), which include:

> **(a)  The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;**
>
> **(b)  The relative earning abilities of the parties;**
>
> **(c)  The ages and the physical, mental, and emotional conditions of the parties;**
>
> **(d)  The retirement benefits of the parties;**
>
> **(e)  The duration of the marriage;**
>
> **(f)  The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;**

**(g)  The standard of living of the parties established during the marriage;**

**(h)  The relative extent of education of the parties;**

**(i)  The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;**

**(j)  The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;**

**(k)  The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;**

**(l)  The tax consequences, for each party, of an award of spousal support;**

**(m)  The lost income production capacity of either party that resulted from that party's marital responsibilities;**

**(n)  Any other factor that the court expressly finds to be relevant and equitable.**

R.C. 3105.18(C)(1).

*Evidence Adduced at the Hearing*

**{¶16}** With respect to Jimmie, the record indicates that at the time of the hearing he was fifty-six years old.  Jimmie earned his GED and began a career in the military, during which he served twenty years.  In 1999, Jimmie retired from the military at the age of 38 and began working full-time at Schwan's in the warehouse,

-8-

where he continues to be employed. Jimmie has a 401(k) account with a balance of approximately $51,000.00, and his employer matches his contributions up to 4%. Jimmie presented evidence establishing that his financial situation had changed since the prior decree. Specifically, the evidence indicated that Jimmie still continued to receive $20,000.00 annually from his military pension in addition to the compensation he earned while working for Schwan's. However, since 2014 Jimmie's wages had decreased due to a restructuring at his place of employment. Thus, Jimmie maintained that it was financially burdensome to continue to be obligated to pay the spousal support amount specified in the divorce decree.

{¶17} As for Cynthia's financial situation, the evidence presented at the hearing indicated that Cynthia was fifty-six years old at that time, had been married to Jimmie for twenty-seven years, and that her highest level of education was a high school diploma. After her divorce from Jimmie, Cynthia was employed full-time for several years, but lost her job in July of 2017. She has a 401(k) from one of her former employers worth approximately $3,000.00, and another retirement account that she actively contributes to which is valued at approximately $2,600.00. According to the 2006 Decree, Cynthia would also receive 55% of Jimmie's base pay pursuant to his military pension Survivor Benefit Plan if he predeceased her. In 2011, Cynthia married her current husband, Ray, who maintains full-time employment. Cynthia admitted that she is voluntarily underemployed despite being

physically capable of working full-time. Cynthia explained she is a foster parent and currently fosters two young children. In addition to paying the mortgage on their own home, Cynthia and her husband also pay the mortgage on the home of Jimmie's and Cynthia's adult daughter.

{¶18} Cynthia stated that she relies on the spousal support she receives from Jimmie to pay her mortgages and other essential expenses. She expressed that if she knew at the time of their divorce that the spousal support would be terminated in 2018, she would not have agreed to forego her entitlement to an equitable share, presumably half, of Jimmie's military pension in 2006. However, Cynthia also stated that she would be willing to reduce the spousal support amount by half to $1,000.00 a month, seemingly understanding of the financial burden the $2,000.00 a month amount obligation placed on Jimmie.

*Discussion*

{¶19} Initially, we note that the trial court found the requisite change in circumstances had occurred in this case to necessitate the modification of the prior decree regarding spousal support. Specifically, the trial court found that:

> **23. There has been a substantial change in circumstances in this case that was not contemplated at the time of the Decree. Specifically, the Plaintiff has twice remarried, and the Defendant's income has decreased over time, such that he has fallen into arrears on the spousal support obligation ordered in the Decree. The parties did not contemplate at the time of the Decree that the Defendant's income reduction would cause him to be unable to afford to pay the spousal support he agreed to.**

**Although the parties may reasonably have anticipated that the Plaintiff may remarry, they did not reasonably anticipate that, while the Defendant was in arrears because of such a large spousal support obligation, that the Plaintiff could be voluntarily unemployed and pay mortgages on not one, but two residences.**

(Oct. 23, 2013 JE (2:24)). After specifically addressing each of the factors contained in R.C. 3105.18(C), stated above, the trial court made the following conclusion regarding the modification of the spousal support amount.

**24. This Court finds that a modification of the spousal support award ordered in the Decree is both necessary and equitable. A termination of spousal support, however, would deprive the Plaintiff of the benefit of her bargain with regard to waiving any claim to the Defendant's military pension for life.**

**25. This Court finds that it is equitable and lawful to modify the Decree as to spousal support. The Decree shall be modified, and the Defendant shall be Ordered to pay the Plaintiff spousal support in an amount equal to half of his military pension, for life. The Defendant's military pension is equal to $20,000.00 per year. Thus, the Defendant shall be Ordered to pay the Plaintiff spousal support in monthly installments of $833.33, plus processing fees, which will total $10,000.00, for life. The Court shall retain jurisdiction to review and modify spousal support. Said payments shall continue to be made through a wage withholding through the Seneca County Child Support Enforcement Agency.**

**26. All spousal support arrears are preserved.**

(Id.).

{¶20} On appeal, Jimmie argues that the trial court erred in continuing his spousal support obligation because Cynthia is now remarried and that he is essentially forced to support her and her current husband. Jimmie directs our

attention to case authority that involves factual scenarios distinguishable from the *sub judice*. In particular, these cases do not involve the parties' separate agreement regarding a waiver of the division of marital property in exchange for spousal support for life, which was incorporated into their divorce decree.

**{¶21}** It is well-established that a separation agreement is a contract and, as such, is subject to the same rules of construction that apply to other contracts. *Golan-Elliott v. Elliott*, 3d Dist. Union No. 14-17-01, 2017-Ohio-8524, ¶ 17; *Troha v. Troha*, 105 Ohio App.3d 327, 332 (2d Dist.1995). The intent of the parties is presumed to reside in the language they chose to use in their agreement." *Hare v. Isley*, 9th Dist. Summit No. 26078, 2012-Ohio-3668, ¶ 9. Accordingly, when that language contained within the contract is unambiguous, "a court may look no further than the writing itself to find the intent of the parties." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37.

**{¶22}** Here, there record indicates that the parties do not dispute that the language used in the separation agreement unambiguously exhibits their intent in 2006 for Cynthia to forego her right to seek up to half of Jimmie's military pension in exchange for receiving the agreed upon amount of spousal support for life. Moreover, it is evident by the specific way the parties chose to fashion the spousal support award that the payments were meant to be made in lieu of a marital property division rather than solely being for the support of the dependent spouse. This is

expressed by the fact that the parties chose to not restrict the payments of spousal support based upon Cynthia's decision to later remarry or cohabite with another person, and that they initially agreed to have the trial court retain jurisdiction to review and modify the spousal support award.

{¶23} Based upon the evidence adduced at the hearing, we conclude that the trial court properly considered the factors in R.C. 3105.18(C) when it modified the spousal support award to accommodate Jimmie's changed financial status. Incidentally, the trial court again retained jurisdiction to review and modify the spousal support award presumably to address potential changes in the parties' finances in the future. As such, we conclude that the trial court did not abuse its discretion in reducing, rather than terminating, Jimmie's spousal support payments to Cynthia as the modified payment amount remains appropriate and reasonable under the circumstances of this case. Accordingly, the assignment of error is overruled.

{¶24} For all these reasons, the assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and PRESTON, J., concur.**

**/jlr**